# Corporation of the Borough of Easton *versus* Neff.

1. A refusal to enter a compulsory non-suit is not assignable for error.

2. In an action by a foot passenger against a municipality to recover damages for injuries resulting from an alleged defect in one of defendant's street crossings, it is error to leave the question to the jury whether there was any necessity for the construction of said crossing. That is a matter purely and solely within the discretion of the municipal authorities.

3. In such case, the question for the determination of the jury is, assuming the necessity of the crossing, was it constructed in such a defective and negligent manner, as to have occasioned the injury.

March 5th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Northampton county:* Of January Term 1882, No. 334.

Case, by Barbara Neff against the corporation of the Borough of Easton, to recover damages for injuries resulting from a fall, caused by an alleged defect in one of defendant's highways. Plea, not guilty.

On the trial, before Reeder, J., the following facts appeared: Barbara Neff, the plaintiff, was a lady sixty-eight years of age and a resident of the borough of Easton. In going to and returning from a church which she had attended for eight or more years, she was accustomed to pass across an alley. This crossing consisted of two parallel lines of flag-stones laid on a level with the adjacent sidewalk, at both sides of which there were gutters to carry off the drainage, which were six inches deep and from seven to eight inches wide.

On the night of February 24th 1878, the plaintiff, while returning from church, fell into one of the gutters and sustained the injuries for which she brought this suit. The night was a

dark one, and no one saw the accident. The only testimony as to its cause, was her own. She testified as follows:

"I went from my home to church that night on North Fifth street, near Mt. Jefferson; after church I started home, and on my way home, right below the tree, I got into the gutter on Fifth street; I do not exactly know which gutter it was, but I got into one of the gutters there, it was very dark; the gutter was between Fifth and Northampton streets, on the west side; the way I came that night was always my direct way home; when I got into the gutter I broke my ankle."

Upon cross-examination, the following additional facts were elicited.

Q. Did you see the gutter before you fell into it that night?

A. I didn't take notice; I have gone across it, of course, but I never took notice of it; I had crossed it often before this night.

Q. Did you know it was there?

A. I had seen it there, but I came out that night not thinking, I suppose, and got into it.

Q. Weren't you walking along without thinking or paying any attention to it?

A. Yes.

Q. You say you had seen it before?

A. I didn't take notice of it that Sunday evening, but I had seen it before.

Q. In crossing it before, had you considered it a dangerous place?

A. Yes, I thought if I got into it; several other women got into it, but they did not fall over like I did.

Q. I want to know whether you thought it a dangerous place?

A. Yes, I thought it was dangerous if a body got into it.

Q. Is your eye-sight good, Mrs. Neff?

A. I can see pretty good without specs yet, and I very seldom use specs.

On the conclusion of plaintiff's testimony, counsel for defendant moved for a compulsory non-suit. Motion refused. Exception. (First assignment of error.)

The judge charged the jury, inter alia:

"Now it becomes a question, gentlemen of the jury, for you to consider, whether there was any necessity for the construction of that crossing at that place, either by the owners of that property for the proper enjoyment thereof, or by the borough for the purposes of drainage. If you should find that it was not necessary for purposes of drainage, then the sidewalk

[Borough of Easton *v.* Neff.]

should not have been altered, and if you find that in its present condition it is not as safe as a pavement would ordinarily be, then the defendant would be guilty of negligence." (Second assignment of error.)

"You must determine, not from your conceptions, not from your imagination, but from the evidence, whether she was guilty of contributory negligence at the time of the happening of this accident. You will remember all the testimony about that. There is really very little testimony upon that subject in the case. What little there is you will consider." (Third assignment of error.)

Verdict for plaintiff for $1,800, and judgment thereon. The defendant took this writ of error, assigning for error the action of the court in denying its motion for a non-suit, and the portions of the charge quoted above.

*Frank Reeder*, for the plaintiff in error.—It was error to leave to the jury the question of the necessity of the crossing. That is a matter solely for the municipal authorities, and not being within the province of a jury was calculated to lead them from the consideration of the true issue.

*B. F. Fackenthall*, for the defendant in error.—The questions of negligence and contributory negligence were properly left to the jury. As to the second assignment, even if the question of the necessity of the crossing was irrelevant, it was the statement of an abstract proposition of law upon a supposed state of facts, by which the defendant was not prejudiced. Such an error is no ground of reversal. If the judge below erroneously affirms or denies a point which is immaterial this court never reverses. The plaintiff in error must show just how the erroneous answer or proposition misled the jury, and when and how it injured them. He must show that the verdict would have been different if the wrong construction had not been given.

Mr. Justice CLARK delivered the opinion of the court, October 1st 1883.

A refusal to enter a compulsory non-suit is not assignable for error ; that has been the uniform ruling of this court, since the passage of the Act of 11th March 1836, relating to the district courts, and of the general Act of 11th March 1875, which has application to all the courts of common pleas, throughout the Commonwealth : Bavington *v.* Pittsburgh & Steubenville R. R. Co., 34 Penn. St. 358 ; Pownall *v.* Steele, 52 Penn. St. 446 ; U. S. Tel. Co. *v.* Wenger, 55 Penn. St. 262 ; Mobley *v.* Bruner,

59 Penn. St. 481 ; Lehman v. Kellerman, 65 Penn. St. 489 ; Ballentine v. White, 77 Penn. St. 20. There is no provision, in either of these Acts, for removal of the record into this court, by writ of error for revision or review, except where a judg- ment of non-suit is entered, and a motion to set that judgment aside has been refused. The remedy of the defendant was, by prayer to the court for instruction to the jury, upon the insuf- ficiency of the plaintiff's evidence ; he may always prepare the particular point, on which instruction is desired, and the court is bound to give it. The first assignment of error, therefore, does not properly present the question, sought to be raised under it, for the consideration of this court.

We are of opinion, however, that the second assignment is sustained. We cannot agree with the learned court, that it was a question for the jury " to consider, whether there was any necessity for the construction of the crossing," at the place where the injury was received. The question of its necessity was for the municipality of the borough of Easton. Her cor- porate officers had the undoubted right, under the law to ordain and establish such sewers, pavements, gutters, &c., as they should deem necessary. They had the right to regulate these pavements, gutters, &c., and to fix their heights, grades, widths, slopes and the forms thereof. They had all needful jurisdiction over this subject matter. It was not a question, therefore, properly referable to the jury, whether the crossing or the gut- ters therein were necessary, either to the owners of the lots of ground fronting thereon, for the enjoyment thereof, or to the borough in general for purpose of drainage or otherwise ; the question of their necessity having been adjudicated in their construction by the corporation. If a person, by mere acci- dent, and without fault of any one, were killed in a public street, it would be a most unwise and unjust rule of law, which could hold the municipality responsible for the injury, because in the judgment of the jury, trying the case, the street was not necessary for public travel, and should never have been opened for public use. The mere suggestion of the results, necessarily arising from such a rule, is a sufficient argument against its ex- istence. But under our system whenever a power is conferred a corresponding duty is enjoined, and therefore whilst the law invests the municipality of Easton borough with the power to establish and construct pavements and gutters, the law, at the same time, requires that they shall be constructed in a reason- ably safe and secure manner. It is not pretended that the gut- ter was out of repair, but that it was improperly constructed. The question for the jury then, was not as to the necessity for having such a crossing, with the gutters, but, assuming their necessity, were they constructed in such a defective and negli-

gent manner as to have occasioned the injury? Was there in the circumstances of the injury, any proof of negligence on the part of the borough of Easton, in the construction of this crossing? There can be no inference of negligence from the mere fact of the injury; municipalities are not insurers, they are simply responsible for injuries arising from the negligence of the corporate officers, and the burden of proving that negligence is upon those who allege it. An injury may occur from purely accidental causes, in which no fault can be imputed to any one; we are all liable to the ordinary accidents of life. Was this such an accident or was it the result of the defendant's negligence? Was this gutter constructed in the usual and ordinary way and after the plan generally adopted in the borough of Easton and elsewhere? Was it reasonably safe and secure? In passing upon the question of its safety it was proper for the jury to consider not only the method of its construction but the length of time it, with others of the same character, had been in use, the number of people who had safely passed over it, whether or not any injuries had ever been similarly received, &c., &c. Was the injury such as the corporate officers might and ought to have seen was likely to result from such a construction? These were matters proper for the consideration of the jury but the necessity of the crossing was a matter which had previously been settled by another and a competent tribunal. We cannot say that this construction did no harm to the plaintiff in error.

There was evidence in the cause, some of it inferential in its character, tending to show contributory negligence, this was for the jury. In the use of a public highway, in general, ordinary care is undoubtedly the rule: Erie *v.* Schwingle, 10 Harris 384; Lower Macungie *v.* Merkhoffer, 21 P. F. Smith 276; Pittston *v.* Hart, 8 Norris 389. Negligence is defined, however, as the absence of care, according to the circumstances. In this case, the plaintiff was quite familiar with the crossing, she had passed over it often, on her way to and from church; she says she knew it to be a place of danger, she was old and could not see well, the injury was received after night, and the night was dark. Did she exercise a proper measure of care? She was bound to use such care as a prudent person would have used under such circumstances. The measure of duty in the case of a municipal corporation in reference to its streets is but ordinary, and the care of those who use them is the same, whilst the standard of the degree of care is to be measured according to the circumstances. For this reason the question of contributory negligence was peculiarly for the clear and free exercise of the judgment of the jury, under proper instructions from the court. The language of the court that there was really very little tes-

[County of Lehigh *v.* Meyer.]

timony upon this subject was perhaps misleading, but for this alone we might not reverse. All the facts and circumstances attending the injury were to be fully considered on this point.

Judgment reversed and a venire facias de novo awarded.