## Scranton City, Appellant, *v.* Barnes.

*Municipalities—Sewers—Ordinances—Act of May* 23, 1874.

The act of May 23, 1874, P. L. 259, confers no authority to appoint viewers until councils shall have determined by ordinance " to make an assessment for main or local sewerage, or both, according to benefits."

*Practice (Supreme Court)—Assignment of error as to nonsuit.*

Error does not lie either to the entry of a compulsory nonsuit, or to the refusal to enter such judgment; it lies only to the refusal of the court to take off the nonsuit.

Argued Feb. 23, 1892. Appeal, No. 23, Jan. T., 1892, by plaintiff, from judgment of C. P. Lackawanna Co., Oct. T., 1888, No. 872, entering compulsory nonsuit in favor of Julia F. Barnes. Before PAXSON, C. J., STERRETT, WILLIAMS, MC-COLLUM and HEYDRICK, JJ.

Assumpsit to recover balance of assessment for cost of a sewer.

At the trial before GUNSTER, J., it appeared that under the act of May 23, 1874, the city of Scranton laid out a sewer district, and proceeded to construct therein a main sewer. Defendant was assessed $105 on her property in the district. One half of this she paid, the balance being the amount for which suit was brought.

The plaintiff offered in evidence the record of the meeting of councils to hear objections to these assessments. The defendant objected to the offer as being immaterial, there being no evidence of an assessment by board of viewers, and the city councils had no authority to confirm or reject any assessment not made by legal authority.

Mr. Burns: That only goes to the order of testimony.

The Court: That is true, but it being admitted that this assessment, which you now offer to prove to have been confirmed or approved by the councils, was made by a board that was appointed before the ordinance providing how the assessment should be made was passed, the whole thing falls. I sustain the objection and reject the evidence. Exception. [1]

Plaintiff offered in evidence resolution of councils dated June 17, 1886, as follows: "Resolved by the Select and Common Councils of the City of Scranton in joint session assembled, that we do hereby confirm the assessments made by the Board of Viewers of the Third Sewer District. Yeas and nays called on the adoption of the resolution."

By Mr. Davis: The defendant objects to the offer, unless the plaintiff proposes to follow it by showing the appointment of a board of viewers and the assessment made by them, as being immaterial, irrelevant and incompetent.

Objection sustained and exception. [2]

Plaintiff offered in evidence the contract for the construction of the main sewer in the Third sewer district between the city and Hayes, Furman & Co.

By Mr. Davis: The defendant objects to the contract offered for the reason that there is no authority yet shown for the city of Scranton to build a sewer at the expense of this defendant; the offer is immaterial, irrelevant and incompetent.

Objection sustained and exception. [3]

Plaintiff offered to show by action of councils that the appointment of viewers of March 9, 1886, was approved and confirmed by approving assessments made by such board; that Julia F. Barnes, the defendant, had notice of such assessments and made no objection; that she afterwards paid one half of the assessment, and connected her property with the main sewer in the Third district.

Objected to.   Objection sustained and exception. [4]

When E. F. Blewitt was on the stand he was asked:

Q. Mr. Blewitt, what is your position in the city?   A. City engineer.   Q. Were you city engineer in 1886, at the time of the construction of this sewer?   A. I was.   Q. Was this sewer completed according to the contract, Mr. Blewitt?

Objected to.   Objection sustained and exception. [5]

The court entered a compulsory nonsuit, and subsequently discharged a rule to take off the nonsuit.

*Errors assigned* were (1–5) rulings on evidence, quoting the bill of exceptions; (6) in allowing motion for nonsuit.

*I. H. Burns,* for appellant.—The statute gives the municipal authorities general jurisdiction over the planning and construction of sewers, and the intermediate steps as to time are only directory so long as the right of the taxpayers are preserved: French v. Edwards, 13 Wall. 511; Ins. Co. v. Yard, 17 Pa. 338; Steward v. Maple, 70 Pa. 223.

OPINION BY MR. JUSTICE STERRETT, March 7, 1892.

The subject of complaint in each of the first five specifications of error is the rejection of the respective offers of evidence therein recited.

There was no error in refusing either of these offers, for the reason that the proceedings leading up to the alleged assessment, for the recovery of which this suit was brought, were incurably defective in their very inception.   The 47th section of the act of May 23, 1874, P. L. 259, after providing that any city of the third class may divide the same into sewer districts, and direct the city engineer to make an estimate of the costs and expenses of constructing any main sewer, or reconstructing the same, and report to the councils what portion of said costs and expenses is required for main sewerage, and what portion of the same is required for local sewerage, for any lots

and lands, etc., declares "it shall be lawful for the city councils to provide for assessing the costs and expenses of such main sewerage upon the lots and lands within the sewer district, when the work is to be done according to the valuation of the same on the city duplicate, or according to benefits, as they shall determine by ordinance in each case, and to provide for assessing the expenses of such local sewerage upon the feet front of lots and lands, by or through which such portion of any main sewer shall pass, or according to the valuation of the same upon the duplicate aforesaid, or in proportion to benefits upon lots and lands benefited by the local sewerage aforesaid, as they shall determine by ordinance in each case; and, if they determine to make an assessment for main or local sewerage, or both, according to the benefits, they shall appoint five disinterested freeholders, who, or a majority of them, shall assess the estimated expenses of such main sewerage on all the lots and lands in the sewer district, wherein the sewer is to be constructed or reconstructed, in proportion to benefits, and the estimated expenses of such local sewerage on such lots and land as will in their opinion be benefited thereby, whether fronting on the public ground in which the sewer is to be constructed or reconstructed or not, in proportion as nearly as may be to the benefits which may result to each lot or parcel of land.  Said assessors, or a majority of them, shall, within thirty days after their appointment, make report in writing, specifying the amounts assessed by them upon each lot or parcel of land for main or local sewerage separately, and file the same with the city clerk," etc.

It will be observed that the act confers no authority to appoint viewers until after councils shall have determined by ordinance " to make an assessment for main or local sewerage, or both, according to benefits."  By the terms of the act, as well as in the very nature of things, the determination of councils to make an assessment according to benefits—evidenced by the passage of an ordinance to that effect—is a prerequisite to the exercise of authority to appoint viewers ; and there are good and sufficient reasons why it should be so.  Until such determination of councils is officially declared by ordinance, property owners, to be affected by an assessment according to benefits, are necessarily ignorant of what councils may do, and

are thus deprived of their right to object to the selection of improper persons as viewers, etc. In this case the provisions of the act, in regard to such precedent action of councils, was wholly ignored. The viewers were appointed, not only without reference to any ordinance under which they could act, but long before councils took any action indicating a determination to make an assessment according to benefits. It is not clear that any ordinance, such as is contemplated by the act, was ever passed; but, assuming, for sake of argument, that a proper ordinance was passed, it is conceded that it was done long after the viewers were appointed. It is not pretended that viewers were appointed after the power to make such appointment was called into exercise by the passage of the prerequisite ordinance. In short, the proceeding was fatally defective, and nothing that was proved or offered to be shown could have the effect of validating the assessment.

It is an easy matter to follow the plain provisions and requirements of the act, and the sooner municipal authorities realize the necessity of doing so, the better it will be for all concerned. When that is done, less of our time, and the time of the local courts, will be unnecessarily consumed in abortive attempts to correct inexcusable blunders.

The sixth specification, "The court erred in allowing the motion for a nonsuit," is a nullity. Error does not lie either to the entry of a compulsory nonsuit, or to the refusal to enter such judgment; it lies only to the refusal of the court to take off the nonsuit: Borough of Easton v. Neff, 102 Pa. 474; Handley v. R. R. Co., 10 W. N. 8; Millcreek Twp. v. Perry, 20 W. N. 359; Borough, etc., v. Erdman, 21 W. N. 553.

It was no doubt the intention of the learned counsel for appellant to specify as error the discharge of his rule to take off nonsuit; but, if he had done so, it would have been of no avail. For reasons already suggested, in disposing of the first five specifications, the rule was rightly discharged.

Judgment affirmed.