# S. Townsend Stackhouse *v.* Charles H. Vendig & Co., Appellants.

[Marked to be reported.]

*Negligence—Opening in sidewalk—Contributory negligence.*

In an action to recover damages for personal injuries caused by falling over partly opened cellar-doors in a sidewalk, it appeared that the opening was close to the building line of defendants' house. The doors were two feet nine inches square, and each door was sixteen and one half inches in width. The distance of the doors from the house line was three or four inches. The doors were made of iron and properly constructed. At the time the plaintiff fell, both doors were partly opened, the center where they met being about eight inches above the level of the pavement. The raising of the doors to this elevation made a space between their edges of four or five inches, and they were kept in this condition during the daytime for the purpose of lighting and ventilating the cellar. The accident occurred about noon on a day in June. Plaintiff in leaving defendants' building stepped down from a stone doorsill two and one half inches high above the pavement, and turning sharp around, with his eyes elevated.

keeping close to the wall, stumbled over the doors and was injured. *Held*, (1) that defendant was not guilty of negligence in maintaining the doors in the condition in which they were at the time of the accident; and (2) that plaintiff was guilty of contributory negligence.

Argued Jan. 31, 1895.  Appeal, No. 50, Jan T., 1892, by defendant, from judgment of C. P. No. 4., Phila. Co., July T., 1893, No. 958, on report of referee.  Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ.  Reversed.

Trespass for personal injuries.

The case was referred to M. Hampton Todd, Esq., as referee under the act of May 14, 1874, P. L. 176.

From the referee's report it appeared that the defendants were on June 8, 1893, the owners and occupiers of the property situate at the northwest corner of Twelfth street and Market street, in the city of Philadelphia, in which they carried on their business of hotel keepers under the name of " Hotel Vendig." There were two entrances to the hotel, one on Market street and the other on Twelfth street, above Market street.  It was in coming out of the hotel on to the sidewalk, through the Twelfth street entrance, that the plaintiff received the injuries of which he complains.

On each side of the Twelfth street entrance to the hotel the defendants had constructed openings into the cellar of the building.  These openings were located close to the wall of the building, and partly in front of the doorsill of the entrance to the hotel, and extended out into the sidewalk three feet, four inches, and were of the width of two feet, nine inches. The openings were covered by iron double doors, containing glass bull's eyes, and were set in an iron frame about one inch above the level of the pavement, the frame being rounded at the edges to fit down tight on the pavement, the doors opening and closing at right angles to the street and the building, so that when the doors were shut they were substantially on a level with the rest of the pavement.  Each half of the double doors was sixteen and one half inches wide.

The plaintiff, about noon of June 8, 1893, entered the Hotel Vendig by the entrance from Market street.  He testified he was looking for his father.  He passed through various rooms and out of Twelfth street entrance to the hotel, through the

summer doors, the top of which was on a level with his eyes ; pushing the doors apart he stepped on to the doorsill, thence to the pavement, and, turning towards Market street, took one step in the direction of his destination and trod on the half open door over the opening in the sidewalk, heretofore described; his foot tripped and he stumbled and fell, whereby he sustained the injuries for which he claims damages. At the time the plaintiff stumbled over the door, both halves were partly opened, the center being raised about eight inches above the level of the pavement, and held firmly in that position by an iron rachet, working under the doors. The raising of the doors to this elevation made a space between the edges of the doors of four or five inches, and they were kept in this condition during the daytime for the purpose of lighting and ventilating the cellar.

Within ten days after the plaintiff was injured, the defendants erected an iron guard rail around both of these openings in the sidewalk. The tops of these guard rails are about three feet above the level of the pavement.

The referee found for the plaintiff, and assessed the damages at $400.

Exceptions to the referee's report were overruled, and judgment entered for plaintiff for $400.

*Errors assigned* were in overruling exceptions to referee's report.

*George P. Rich*, for appellants.—Cellar openings, guarded by raised doors for the purpose of affording light and ventilation, similar to those used by defendants, are permitted by the city ordinance, and are in very common use : King v. Thompson, 87 Pa. 365 ; McNerney v. City, 150 Pa. 611.

The accident itself raises no presumption of negligence : Borough v. Neff, 102 Pa. 474; Farley v. Traction Co., 132 Pa. 58.

Where the owner has set no trap, where the danger is one patent and visible, the visitor who comes to a house must share this danger in common with the members of the family : Larmare v. Crown Paint Iron Co., 101 N. Y. 391 ; Ray on Negligence of Imposed Duties, 24 and 25 ; Wharton on Negligence, secs. 345, 350 ; Parker v. Portland Publishing Co., 69

Me. 173; Southcote v. Stanley, 1 Hurlstone & Norman, 247; Coombs v. New Bedford Cordage Co., 102 Mass. 572.

Where the defect is one of which the occupier of the house ought to be cognizant, and the natural consequence of which is to produce injury to visitors coming to the house with the express or implied permission, invitation, or procurement of the owner; and if, in consequence of such defect such visitors, while using due care, and without negligence on their part, are injured, then the owner is liable: Scott v. Docks Co., 3 H. & C. 596; Statton v. Staples, 59 Me. 94; Chapman v. Rothwell, Ellis, Blackstone & Ellis, 168; Indermaur v. Dames, L. R. 2 C. P. 311; Hydraulic Works v. Orr, 83 Pa. 332; Gramlich v. Wurst, 86 Pa. 74; Gillespie v. McGowan, 100 Pa. 144; Schilling v. Abernethy, 112 Pa. 437; Moore v. Logan Iron & Steel Co., 4 Cent. Rep. 505; Rodgers v. Lees, 140 Pa. 475.

Plaintiff was guilty of contributory negligence: Robb v. Borough, 137 Pa. 42; Farley v. Traction Co., 132 Pa. 58; Haven v. Bridge Co., 151 Pa. 620; Keller v. Ry. Co., 149 Pa. 65; Seddon v. Bickley, 153 Pa. 271; Fox v. Borkey, 126 Pa. 164.

*Edmund Randall, H. Gilbert Cassidy* with him, for appellee.—A person who interfered with the sidewalk of a city, making it dangerous, is liable for the consequences, whether he knew it was dangerous or not, irrespective of any permission from the city to use it. Cellar and flap doors are often lawfully connected with the street, but it is the duty of the owner to properly guard them: Sexton v. Zett, 44 N. Y. 430; Wharton on Negligence, 815; Wood on Neg. 473; Collins v. Harrison, 2 W. N. C. 355.

A person has the right to assume the safety of the sidewalk, and if he steps into an open coal hole in broad daylight it would be for the jury to say whether he was guilty of negligence: Jennings v. Van Schaick, 108 N. Y. 530; Beach on Neg. 246.

OPINION BY MR. JUSTICE GREEN, March 11, 1895:

The plaintiff received his injury by stumbling over an iron door which was set in the pavement close to the building line of the defendants' house. The accident occurred about noon of a day in the month of June. It was therefore in broad day-

light when there was no difficulty in seeing the door if any attention was given by the plaintiff to his steps. He had to step down from a stone doorsill two and a half inches high above the pavement in moving away from the building. The cellar doors were two feet nine inches square, and each door was sixteen and a half inches in width. The distance of the doors from the house line is three or four inches. The doors were made of iron in the usual manner, were properly set in the pavement and were in every respect strong and safe for the purpose for which they were intended. There was a coal hole out near the curb through which coal was introduced.

. The architect who was employed to erect the building testified without any contradiction, that these doors were not coal chutes but cellar doors, " and constructed in the very best possible manner." Also that they " were constructed for the purpose of taking in and out materials to and from the cellar and for light and ventilation of the cellar," and that it is usual in Philadelphia to have such openings for lighting and ventilating cellars and that these openings were reasonably necessary for these purposes. He also said that " in Philadelphia it is usual and customary to find area ways and cellar doors next to the house line and close to the entrances." He said further that " to be of service as ventilators they must be kept open." Upon these subjects there was no dispute in the testimony. It was not found by the referee that there was any negligence in having or maintaining such a structure, or that there was any defect in the structure or position of these doors. The city ordinances of Philadelphia permit areas, cellar doors, doorsteps, porches and similar obstructions in the sidewalk provided they do not project more than four feet six inches from the house line. Ordinances Sept. 23, 1864, sect. 11 ; April 5, 1866, sect. 1, Brightly's City Digest, 808, 809. The extreme projection of these doors from the house line was just about three feet, which was eighteen inches within the line. So far then as to the doors themselves, their position and their structure, there is not a scrap of testimony in the case, and there is no finding of the referee, that there was the least degree of negligence on the part of the defendant. Had the plaintiff, therefore, stumbled over them when they were shut of course he would have had no cause of action.

The only finding of negligence of the defendants which the learned referee makes is in the following words, " that it was negligent in the defendants to keep them open at an elevation not sufficiently high to attract the attention of the eye and yet so high that a foot passenger who should step upon them would most likely be tripped, and this is particularly so in view of their location partly in front of a door to a largely frequented hotel."

This, of course, is a finding of negligence by way of inference. The referee thought it was negligence to keep the door raised for a reason which he states. So far as the facts are concerned there is no dispute. The question to be considered is, whether the inference of negligence made by the referee is correct. That depends upon several considerations. If such doors were kept raised in the middle of the footwalk they would constitute an obstruction to the travel, and their maintenance in such a place and such a position would certainly constitute negligence. But if a doorstep were projected into the middle of the footwalk that also would be negligence, whereas it would not be negligence to maintain such a step within a reasonable distance of the house line. The city ordinances may well be considered as furnishing the criterion of distance from the house line, within which it would not be negligence, and without which it would be negligence, to maintain a doorstep or other lawful structure appurtenant to a house in the city. There are quite a number of such structures or appliances, all of which are essential to the comfortable occupancy of the dwelling houses and the business places of the city. As described in the city ordinances they are areas, cellarways, cellar doors, doorsteps, porches and area fences and railings. They will be found designated in several city ordinances appearing in Brightly's City Digest at pages 808, 809. These ordinances prescribe that the structures in question shall be deemed nuisances if they project more than four feet six inches into the footway of streets of certain widths, or if they reduce the width of the footway to less than a certain number of feet in streets of different widths.

These structures, therefore, which comply with the requirements of the ordinances, are by necessary implication, lawful, and it is not negligence to maintain them. Hence if a person passing on the footwalk stumbles over any of them that are

within the prescribed distance from the house line he cannot hold the owner guilty of negligence for maintaining them. Thus there are innumerable doorsills or single steps all over the city which project into the footway from the level of the door, different distances less or equal to, the authorized distance of four feet six inches.    There are in the city vast numbers of such instances, also short flights of doorsteps extending similarly into the footway, so numerous that they cannot be computed.    Now it is perfectly obvious that if a pedestrian stumbled over one of these sills, or the bottom step of a flight, he has no cause of action.    Yet in the present case there is but one ground upon which a recovery can be based, and that is, that the plaintiff stumbled over these cellar doors.    They were raised no higher than many of the doorsills referred to, and not so high as the vast majority of the bottom doorsteps, and yet it is claimed, and found by the referee that it is negligence to maintain a pair of cellar doors eight inches above the level, when he could not possibly find that such an elevation of a doorsill or step would be negligence.    It would not be negligence to maintain the cellar doors at their own level, it would not be negligence to maintain a doorsill or step at the same level, but it is negligence to maintain the cellar doors at the same or a less level than the steps.    Why?    The only reason given by the learned referee is that the pedestrian might not see them. But the same reason precisely would apply to the case of a doorsill or step.    The omission to see the obstruction, whatever it is, will not only be no proof of negligence on the part of the owner, but it is positive proof of actual negligence on the part of the pedestrian, and this is well established by the authorities as we shall presently see.

In this particular case there was a reason for the slight elevation of the cellar doors.    The referee found that they were kept in this position " for the purpose of lighting and ventilating the cellar."    As that is a perfectly legitimate use of them, and was one of the reasons why they were built, it must be conceded that, in itself, it constitutes no ground for a charge of negligence.    Another reason why such a use of them is no proof of negligence is that the doors were so close to the building line, and so far out of the way of the travel on the sidewalk, that the owner is not bound to take precautions against

foot traveling at such a place, and this also has been decided by this court. Still another reason is that the owner has a right to presume that every traveler in the streets and on the sidewalks of a city, will use his eyes sufficiently to protect himself from colliding with obstructions, and this also we have decided. In this case it is obvious that in order to make out negligence in the owner, negligence in the foot passenger must either be overlooked or disregarded.

We will now examine the authorities applicable to the facts of the case.

In the case of King v. Thompson, 87 Pa. 365, the plaintiff sustained injuries by falling into an opening in the sidewalk, at a cellar window of a building of the defendant on Liberty street in the city of Allegheny. The opening was for the purpose of light and ventilation, and was also used for taking in coal. It was about fifteen inches in width, three feet in length, and projected from the wall of the house about sixteen inches. It was several feet deep and had no cover or guard. The accident occurred at night, the street lamps were burning and there was a light in the window just above the hole. The plaintiff stepped into the hole and was severely injured. A verdict and judgment were recovered in the court below which we reversed. Mr. Justice PAXSON said, " If the opening was merely the usual and customary opening of cellar windows in Allegheny, and was reasonably necessary for the purposes of light and ventilation, it certainly could not be held to be a nuisance; nor could it fairly be said that the owner was guilty of negligence in maintaining it. . . . It must be borne in mind that the opening came out only about sixteen inches from the cellar wall. In order to fall in the plaintiff must have walked so close to the window as to touch it with her dress. She was also within the line of the doorsteps which usually project twice the distance into the sidewalk that the opening did. No prudent person walks within sixteen inches of the house when passing over the sidewalks of a city. It cannot be done without peril. It is proper enough to hold owners of property to a reasonable care over it; yet at the same time persons using public streets ought also to exercise some little caution. Without it, there is hardly a street in Allegheny or Pittsburg where by reason of some slight inequality in the pavement, a trifling

hole, or a loose stone, the passer-by may not fall and sustain injury."

The decision goes farther than is necessary for the present case. The cause of the injury there was an open and unguarded hole in the sidewalk several feet deep, and it was night when the accident occurred. Yet we held that the proof of these facts did not make out negligence on the part of the owner, and did furnish proof of negligence on the part of the plaintiff, whereas in this case there was no hole in the pavement, there was a perfectly visible obstruction consisting of a lawful structure in use for a lawful purpose, and the accident occurred in broad daylight. The plaintiff admitted on cross-examination that when he came out of the door he turned " sharp around " and went close to the wall and stumbled over the doors which he says he could have seen if he had looked towards them. A disinterested witness who saw him when he stumbled, and was within a few feet of him, said that when he came out and stumbled over the door he was looking at the Terminal building on the opposite side of the street, " with his eyes looking up." As a matter of course he could have seen the doors if he had looked at all where he was going, and for not doing so he was clearly guilty of contributory negligence. On that subject the case of Robb v. Connellsville Borough, 137 Pa. 42, is directly in point. There a woman in the early evening was walking along the street and came to a cross-street where the plank walk had been raised a few inches above the level of the street on which she was walking. She did not look for any obstruction, and admitted she could have seen it if she had looked. She stumbled at the point where the walk was raised and fell, receiving injury. She sued the borough for damages for her fall, but the court below thought she was guilty of contributory negligence in not looking where she was going and nonsuited her, and we sustained the nonsuit. Our brother MITCHELL, delivering the opinion, said : " That the reasonable care which the law exacts of all persons in whatever they do involving risk of injury, requires travelers, even on the footways of public streets, to look where they are going, is a proposition so plain that it has not often called for adjudication. But it has been expressed or manifestly implied in enough of our own cases to constitute authority for those who need it. Thus in Barnes v. Sowden,

119 Pa. 53, the court below instructed the jury that 'persons who walk along the footways or cross the streets of our city are bound to use their own faculties. . . . The plaintiff was bound to use her eyes. Not that she was to keep her eyes constantly and at every moment upon the pavement, but she was bound to do what people walking along the streets ought to do as they walk the streets in order to use them safely.' It was held that even this instruction was, under the evidence, too favorable for the plaintiff, that the obstruction was such as she was bound to see, and that her negligence was too clear to be left to the jury."

In Buzby v. Phila. Traction Co., 126 Pa. 559, Mr. Justice MITCHELL said, delivering the opinion, "Even on the sidewalk, specially devoted to the use of foot passengers, a man is bound to look where he is going, and this duty is still more imperative when he is about to cross the middle of the street where horses, wagons and cars, have equal rights with himself, and where each is bound to take notice of such other rights, and to use his own with due regard thereto."

In the case of Seddon v. Bickley, 153 Pa. 271, we held that the presence of a gang plank of a steamboat lying flat upon its surface in the usual place on the deck of the vessel, across the path to a staircase leading from the lower to the upper deck is not a fact sufficient in itself to entitle a passenger who has stumbled over the plank to recover damages from the owner of the steamboat for the injury sustained.

In Farley v. The Traction Co., 132 Pa. 58, we held that a passenger on a street railway car who stumbled over the sheathing of a wheel which projected above the floor, but was plainly visible, had no right of action and could not recover, both because there was no proof of negligence on the part of the defendant, and there was affirmative proof of contributory negligence on the part of the plaintiff. The court below in granting a compulsory nonsuit which we affirmed said, "There was nothing hidden from his view which contributed to his fall. He fell simply because he took no care as to his movements and hence stumbled over a conspicuous part of the car. The same carelessness would cause a passenger to stumble over many other parts—over the steps by which he entered, over the sill of the door, or indeed any part of the car over which it is possible for a heedless person to stumble."

And so here, the plaintiff stumbled because he took no heed of his movements. Had he been looking where he was going he would necessarily have seen the cellar doors and avoided them.

His accident was his own fault. He stumbled over a lawful structure in a lawful place, which was being used for, a lawful purpose and in such circumstances he can recover nothing from the defendant.

On the trial it was proved without contradiction that from four to five hundred persons passed through this same entrance every day, making a total of about 150,000 persons in a year, and in all that time there had been no other accident but this. It is impossible to understand how any reasonable inference of negligence of the defendant can be drawn in such a state of the testimony, or how any other inference, than of contributory negligence of the plaintiff, can satisfy the undisputed facts of the case.

Judgment reversed.