Sarah J. Canavan and William Canavan, her husband, in right of Sarah J. Canavan, v. City of Oil City, Appellant.

*Negligence—Municipalities—Uncovered gutter.*

A municipality is not liable for personal injuries caused by a fall into an uncovered gutter at a street crossing, where it appears that the gutter was reasonably safe, and that the open gutter is a common, approved method of construction at crossings in cities and boroughs.

*Municipalities—Duty as to lighting streets.*

Where a municipality provides properly constructed and reasonably safe streets it is not bound, in the absence of statutory command or charter duty, to illuminate them.

Argued Oct. 20, 1897. Appeal, No. 121, Oct. T., 1897, by defendant, from judgment of C. P. Venango Co., Aug. T., 1894, No. 72, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries. Before CRISWELL, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,150. Defendant appealed.

*Error assigned* among others was in submitting the case to the jury.

*P. M. Speer*, city solicitor, with him *Isaac Ash*, for appellant. —When the facts are undisputed or admitted, the question of negligence or contributory negligence is not for the jury, but for the court: Erie v. Magill, 101 Pa. 616 ; Barnes v. Sowden, 119 Pa. 53 ; Wilson v. Penna. R. R. Co., 177 Pa. 503 ; Easton v. Neff, 102 Pa. 474 ; Stackhouse v. Vendig & Co., 166 Pa. 582 ; King v. Thompson, 87 Pa. 365 ; Robb v. Connellsville Boro., 137 Pa. 42 ; Seddon v. Bickley, 153 Pa. 271 ; Lynch v. Erie City, 151 Pa. 380 ; Buzby v. Traction Co., 126 Pa. 559.

*Wm. J. Breene*, with him *Peter A. Wilbert*, for appellee, cited Borough of Easton v. Neff, 102 Pa. 477 ; Indianapolis v. Scott, 72 Ind. 196 ; Ely v. Railway Co., 158 Pa. 233 ; Erie City v. Schwingle, 22 Pa. 384 ; Pittston Boro. v. Hart, 89 Pa. 389 ; Douglass v. Water Co., 172 Pa. 435 ; Glase v. Phila., 160 Pa. 488 ; Bruch v. Phila., 181 Pa. 588 ; Braunschweiger v. Waits, 179 Pa. 51.

OPINION BY MR. JUSTICE DEAN, January 3, 1898 :

In the defendant city, among others, are three traveled paved streets, with paved sidewalks ; two of these are First and Second, parallel, running east and west, a square apart ; connecting them is Short street, running north and south at right angles to them. Both streets and sidewalks are paved with brick with crossings for pedestrians, where they intersect ; the sidewalks were set with curb ; the surface of the street, starting at about

eight inches lower than the curb, gradually ascended to the middle of the street, where the crown was about on a level with the pavement curb, thus causing a watershed to the gutters next the curb on each side; at the intersecting crossings, however, for the width of the crossing, there was what is called in the testimony, a false curb, which was on a level with the pavement leading to the crossing; this maintained the crossing at the level of the pavement, and instead of stepping down into the gutter, the traveler walked over the crossing on the same level as the pavement; but to prevent obstruction of the gutter, it was necessary to place this false curb about twelve inches from the pavement curb, and at about the height of eight inches from the surface of the gutter; this left a space twelve inches wide and eight deep from the pavement to the crossing, over which the traveler must step in crossing Short street at its intersection with First street.   About eleven o'clock in the evening of September 11, 1891, the real plaintiff, Sarah J. Canavan, who had lived in Oil City twenty-seven years, was walking on the sidewalk of First street, and attempted to cross Short street at its intersection; a friend, Mrs. Clark, was with her; in stepping over the curb, instead of reaching the level of the crossing, she stepped into this gutter, cutting and bruising her leg and ankle; the injury, although apparently not very severe at the time, ended in serious and painful disability.   She then brought this suit for damages, alleging the city was negligent in maintaining the open gutter at the intersection of the streets.   Although there was some dispute at the trial in the court below as to the fact, the decided weight of the evidence tended to show that the city maintained an electric arc light of two thousand candle power at the corner of Second and Short streets, two hundred and fifty-four feet distant from the place of the accident, and that this light in some degree illuminated this latter point; there was also another arc light at State and First streets, three hundred and forty-three feet distant.   There was a decided conflict in the evidence as to what extent these lights made plain the gutter.   The evidence showed that on the night in question there was full moon.   The design and mode of construction of a large number of the streets and gutters were the same as at Short and First streets; and although the brick pavement of surface of the streets had been adopted and the work only fully

completed about a month before the accident, yet, for years, at most of the crossings, there had been a depressed gutter, some places bridged with plank, but at others open. And it was undisputed that from Mrs. Canavan's home, from which she had walked that day to an entertainment that evening, she must necessarily have stepped over about twenty of these gutters, some like unto this one, others conforming to the old method of paving. The evidence established that the construction of the sidewalks and crossings, as at the place of accident, was common in towns and cities, and generally was considered an improvement over the older methods. The evidence also showed that the city had contracted for the covering of these gutters by metal slabs or plates which had not yet been put in place.

In substance, the court submitted to the jury, on the evidence, two questions: 1. Was the city guilty of negligence in constructing and continuing in use the open gutter plan at crossings? 2. Assuming there was no negligence in this particular, was it negligent in not providing sufficient light, whereby the gutters at the crossings could be seen and safely used? Under the instruction there was a verdict for plaintiff, and defendant appeals, assigning four errors, the substance of all of them however being disposed of by a consideration of the first, that the court did not instruct the jury that under the law and the facts the verdict should be for defendant; this, as already indicated, the court refused to do.

The very careful consideration which the learned judge of the court below gave to all the points raised in the issue, and his lucid charge to the jury, render the work of review easy. While our conclusion is that he erred in assuming, that on this evidence the controlling question was one of fact for the jury, it can scarcely be said the law is well settled throughout the United States otherwise, for the text writers and decisions on the questions are not always in harmony. The municipality is not an insurer of travelers on foot or in vehicles from accident or injury. All agree that this is the law. It is only bound to construct and keep in repair its highways, so that, they shall be reasonably safe, by night and by day, for the public who use them. In constructing paved streets and sidewalks, it is absolutely necessary to the durability and passability of both, that suitable gutters be provided at the sides for conveying from the

surface the water from rains or melting snows. To this end different methods are adopted. In the case before us the gutter at the crossing was of suitable size, in view of the watershed; was in good repair, but was not covered or bridged. This, while not the only method, nevertheless, is one adopted in many towns and cities all over the land, and the fact was not disputed. The writer steps across not less than ten of them on his way from his hotel to the court room in the city of Pittsburg. The defendant might have covered these gutter crossings, as it probably intended to do; whether this would in any degree have lessened the inconvenience or the danger to the general public is problematical. Experience teaches, that the bridge is at all times liable to displacement from contact with wagon wheels, from the warping by the weather, and from accumulation of drift and filth on the upper side in time of rains; the tendency then being to choke and dam the water. It is possible that the open gutter is not the very best design; but there is no duty on the city to adopt the very best; if we so decide, then the rule is no longer that the highways shall be maintained in a reasonably safe condition, but a higher duty is imposed, that is, that they shall be constructed in the very best method for safety. This approaches very nearly the liability of an insurer. It would result in submitting to a jury in case of every accident on a street or sidewalk the question, as to whether the municipality had adopted the very best kind of paving, both in material and design, and the very best of gutter crossings; and the fact would have to be ascertained from numerous expert witnesses, each favorable to some particular kind of pavement as the best, and asserting that all other kinds were the worst, or at least inferior. There would be no difficulty in proving that the present improved asphalt pavement is more slippery than cobblestones, Belgian block or brick, and that an injured animal would not have fallen, except for the new pavement. We are not inclined to increase municipal burdens by adding to or enlarging the established rule; established at least so far as concerns our own decisions. Judicial observation convinces us that under the present rule municipalities have as great a load as they can reasonably carry when they are required to provide " reasonably safe " highways. There was no dispute as to the fact that the open gutter was a common approved method of

CANAVAN *v.* OIL CITY.

construction at crossings; nor could there be under the evidence any dispute as to this crossing being reasonably safe; the only fact from which it was argued that it was not reasonably safe was that it was uncovered; but that as already noticed, if not the best, was an ordinary approved method of construction. This being so, the case comes directly within the principles announced in Borough of Easton v. Neff, 102 Pa. 474. There the plaintiff stepped into a gutter at a crossing in the nighttime, and was injured. The court submitted the evidence to the jury to find: 1. Was there any necessity at all for the gutter? 2. Was it as safe as a pavement would ordinarily be? On appeal, this court held, reversing the judgment for plaintiff, that the necessity for the gutter was exclusively for the judgment of the corporation, and not the subject of review by the court; and, as to the second question, all the jury could properly do was to inquire whether the gutter was constructed in the usual and ordinary way, after the plan adopted by the borough, and in use elsewhere. This case only followed King v. Thompson, 87 Pa. 365, and was followed by Robb v. Connellsville Boro., 137 Pa. 42, Seddon v. Bickley, 153 Pa. 271, and Stackhouse v. Vendig & Co., 166 Pa. 582. To practically leave the question to the jury, whether the open gutter undisputedly constructed in the ordinary way is the very best, might lead to a finding by another jury directly opposite. Suppose the city bridges it; then a traveler steps over the side of the bridge, and is injured; he sues for damages, and calls witnesses who testify that the open gutter is safer than the bridge; that a mishap is less likely over a twelve inch gutter at a level crossing right before his eyes, than are the two sides of a narrow bridge, neither being before him. The court should have instructed the jury that on the undisputed facts there was no proof of negligence by the city.

As to whether sufficient light was provided by the city on the night of the accident, we may briefly say, that there is no legal obligation on a municipality to light its streets when their construction is reasonably safe for travel. That is solely a question for the municipal legislature. It may do many things not enjoined by law to promote the general well being and comfort of the citizen; but, in not doing that which no statute commands, negligence cannot be imputed to it. This, however, in

no sense relieves it from the duty of that ordinary care which requires that temporary excavations for building purposes should be exposed by proper light; or that temporary obstruction of the streets by building material should be made conspicuous in the same way. Here, the gutter was not temporary, but permanent; the same construction existed over the city of which plaintiff for twenty-seven years had been a resident; she knew and was bound to know, as is said by our Brother MITCHELL in Robb v. Connellsville Boro., supra, that some break in the continuity of the pavement probably existed at this point; and this, whether with or without artificial light. We have not found any authority which holds that a municipality, in the absence of statutory command or charter duty, is bound to illuminate its highways: Bruch v. City of Phila., 181 Pa. 588, has no application to these facts. That was the case of a pedestrian on the pavement, falling into a hole left open in the pavement; the city defended solely on the ground of his contributory negligence, and alleged it had provided an electric light not distant from the hole, whereby he could have seen and avoided it, if he had exercised ordinary care in passing over the pavement. The obligation of the city to provide light was not in question.

We are of opinion that on the undisputed facts in law plaintiff had no case.

The judgment is therefore reversed and judgment entered for defendant.