# Sefert *v.* City of Williamsport, Appellant.

*Negligence—Municipalities—Street crossings — Open gutters—Standard of care.*

A municipality must maintain its streets and gutters in a reasonably safe condition. It is not required to construct them in the very best manner in order to relieve itself from liability for damages to persons injuring themselves thereon.

In an action against a municipality for the negligent construction of a street gutter, a verdict for the plaintiff will be reversed, where it appeared that the gutter was constructed after a manner usual in the city and that the plaintiff was thoroughly familiar with the premises.

Argued November 13, 1923. Appeal, No. 265, Oct. T., 1923, by defendant, from judgment of C. P. Lycoming Co., Sept. T., 1921, No. 267, on verdict for plaintiff, in the case of Margaret Sefert v. City of Williamsport.

Assignment of Error—Opinion of the Court. [82 Pa. Superior Ct.

Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Trespass to recover damages for personal injuries. Before WHITEHEAD, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff, Margaret Sefert, in the sum of $648.50, and judgment thereon. Defendant appealed.

*Error assigned* was, among others, refusal of defendant's motion for judgment non obstante veredicto.

*Frank P. Cummings,* and with him *John C. Rogers,* City Solicitor, for appellant.

*Otto G. Kraupp,* for appellee.

OPINION BY TREXLER, J., February 29, 1924:

Margaret Sefert, the plaintiff, on November 21, 1919, left her home to visit her father-in-law. In proceeding to her destination she crossed St. Boniface Street. There was a concrete way crossing the street. As Mrs. Sefert continued on the concrete walk, she thought she had arrived at the pavement on the other side; turned left and walked into the hole, which had been put there for the purpose of draining the street and carry the surface water underneath the crossing. This hole was 17 inches long paralleling the crossing, was 12 inches wide at the top and 4 inches at the bottom and was about a foot deep.

There was evidence that the drain was constructed according to the common and approved method of building drains in the City of Williamsport in hundreds of cases, all over the city. There was an attempt to contradict this testimony, but it failed. A former city engineer was called and asked if "this drain (locating it) were constructed with the opening within the beaten path

of travel by the public, would that be, or not, the usual and ordinary construction of such drains in the City of Williamsport up to 1919." The answer was, "Not that I know of, no sir." The question asked him was not properly framed, for this opening, although it may have been in the beaten path as to vehicular traffic, was not in the beaten path for pedestrians, for there was a five-foot wide concrete crossing at this place. The street on which the accident happened was a dirt street, unimproved, there being a grass plot between the hole and the sidewalk. Of necessity if the surface water was to be conveyed under the concrete crossing there had to be an opening to admit it.

The principles of law governing these cases were clearly stated by Justice DEAN in Canavan v. Oil City, 183 Pa. 611, 615, 616, "It is possible that the open gutter is not the very best design; but there is no duty on the city to adopt the very best; if we so decide, then the rule is no longer that the highways shall be maintained in a reasonably safe condition, but a higher duty is imposed, that is, that they shall be constructed in the very best method for safety. This approaches very nearly the liability of an insurer. It would result in submitting to a jury in case of every accident on a street or sidewalk the question, as to whether the municipality had adopted the very best kind of paving, both in material and design, and the very best of gutter crossings; and the fact would have to be ascertained from numerous expert witnesses, each favorable to some particular kind of pavement as the best, and asserting that all other kinds were the worst, or at least inferior......We are not inclined to increase municipal burdens by adding to or enlarging the established rule; established at least so far as concerns our own decisions. Judicial observation convinces us that under the present rule municipalities have as great a load as they can reasonably carry when they are required to provide 'reasonably safe' highways. There was no dispute as to the fact that the open gutter was a com-

mon approved method of construction at crossings; nor could there be under the evidence any dispute as to this crossing being reasonably safe; the only fact from which it was argued that it was not reasonably safe was that it was uncovered; but that as already noticed, if not the best, was an ordinary approved method of construction. ......All the jury could properly do was to inquire whether the gutter was constructed in the usual and ordinary way, after the plan adopted by the borough, and in use elsewhere": Citing Easton v. Neff, 102 Pa. 474.

If, however, there was sufficient in the case to require the submission to the jury of the question whether this drain adopted by the city was in common use, we all think that the plaintiff must fail by reason of the fact that she was guilty of contributory negligence. Her testimony is that she had knowledge of the construction of the concrete crossing from the time it was constructed by the City of Williamsport in 1916. She had lived in the neighborhood many years and was a frequent visitor at her father-in-law's home as often as once a day and went there quite a number of times each week, and usually took this route. She remembered when this drain was built under the concrete crossing and saw the hole or drain frequently; had frequently passed by it; sometimes went round there at night. The crossing over St. Boniface Street joined the flagstone walk going west on Hughes Street leading to the side entrance of her father-in-law's house. There was, therefore, a safe passage for this woman from the side of the street from which she started all the way to her father-in-law's building. By an error of judgment she thought she was across the street and stepped off the safe concrete walk into this hole. We do not think the city is liable for her error in judgment; the fact that the night was very dark and no lights had been provided by the city made it her duty to proceed with great caution. The city could not be charged with negligence because it failed to light this street: Canavan v. Oil City, supra. An accident of this

kind could happen on any dark street where a person would think he had arrived at the end of a block and would turn toward the drive-way and fall over the curb. Contributory negligence appearing in the plaintiff's case in her own testimony and she being the only witness to the accident, it was the duty of the court to give binding instructions for the defendant.

The judgment of the lower court is reversed.