Roslik, Appellant, v. Pittsburgh.

Argued April 28, 1944. Before KELLER, P. J., BALD-
RIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ.
(RHODES, J., absent).

*Joseph A. Burns,* with him *Louis A. Barmen,* for ap-
pellant.

*Frederic G. Weir,* Assistant City Solicitor, with him
*Anne X. Alpern,* City Solicitor, for appellee.

OPINION BY RENO, J., July 15, 1944:

Appellant brought this action of trespass to recover
for personal injuries sustained when he fell while step-
ping from a curb into a cross-walk within defendant
municipality, alleging that defendant had negligently
permitted the cross-walk to remain in a state of dis-
repair. As the sole assignment of error is the granting
of judgment n.o.v. on defendant's motion, the facts, with
all the legitimate inferences to be drawn from them,
will be stated in the light most favorable to the plain-
tiff, who had the verdict below: *German v. McKeesport
City,* 137 Pa. Superior Ct. 41, 8 A. 2d 437.

Federal Street in Pittsburgh runs generally north
and south at the point where it is crossed by Jacksonia
Street and the accident occurred at the southwest
corner of this intersection. On the evening of January
12, 1938, one Norman Geyser was visiting at plaintiff's
home and between 11:30 and midnight he decided to re-
turn to his own residence. Plaintiff agreed to walk part
of the way with his guest, and the two men proceeded
from plaintiff's home on Perrysville Avenue to Federal
Street, south on Federal Street and across Jacksonia
Street, a distance of four or five blocks. The two then

stopped in a saloon on the corner of Jacksonia and Federal Streets, and although they had not previously been drinking during the evening, each consumed two or three small glasses of beer but did not become intoxicated. After an interval of approximately an hour, plaintiff and Geyser left the saloon and parted, each to return to his respective home. As plaintiff, walking north on Federal Street, stepped off the curb into Jacksonia Street, his foot caught in a depression in the paving, he was thrown to the ground, and sustained a fractured leg. Plaintiff was proceeding carefully at the time of the accident but he was unable to observe the depressed place in the street because there was snow on the ground that evening, which made the entire surface appear level, and while he had lived in the general neighborhood of the intersection for many years he was unfamiliar with its contours because other streets in the vicinity were more convenient for his personal purposes and he used them almost to the entire exclusion of Federal Street. After plaintiff's fall, Geyser, who had observed the incident, went to his assistance until plaintiff was removed to a hospital.

From photographs admitted in evidence it appears that the cross-walk on Jacksonia Street is constructed of large flagstones, the first of which is laid parallel to and approximately level with the curbing at the southwest corner of the intersection here involved. Between the flagstones and the curbing is a row of stone paving blocks, set perpendicular to the first flagstone, the tops of which are two to three inches lower than the flagstone and the curb. The arrangement of the curb, paving and flagstones thus presents a depressed area two to three inches deep, eleven to fourteen inches wide, and five feet long. Plaintiff himself admitted that the paving stones did not appear to have sunken from the position in which they had been placed when the street was laid, and that the cross-walk looked as though it had been constructed exactly as it existed the night of his

accident. Geyser, who had long been familiar with the corner, stated that the depression, to the best of his knowledge, had always been there. Ferdinand Herbert, a witness called by plaintiff, testified that he had known the condition of the intersection since 1922 and that the paving stones had been below the level of the curb and the flagstone ever since that time. There was no testimony that the paving blocks adjacent to the curb had ever been on the same plane as the remainder of the cross-walk or that they had receded to any degree with the passage of the years since the initial surfacing of the street.

A municipality is under a duty to construct and maintain its streets and sidewalks so that they will be in a condition reasonably safe for the use of the public by night and by day, but it is not an insurer of the safety of those who travel upon its thoroughfares: *Good v. Philadelphia,* 335 Pa. 13, 6 A. 2d 101; *Schramm v. Pittsburgh,* 337 Pa. 65, 9 A. 2d 373; *Hammer v. Philadelphia,* 104 Pa. Superior Ct. 119, 158 A. 659. When one who has been injured in an accident on a city street relies upon the municipality's negligent failure to make repairs as a basis for the city's liability, he is obliged to prove, in the first place, that a defect causing the injuries had come into existence, and, secondly, that the city had actual or constructive notice of the dangerous condition: *Frazier v. Pittsburgh,* 142 Pa. Superior Ct. 88, 15 A. 2d 499; *Clark v. Pittsburgh,* 145 Pa. Superior Ct. 565, 21 A. 2d 413. All of plaintiff's evidence, fairly construed in his favor, indicates that the depression into which he stepped was not attributable to wear and tear or the action of the elements, but that it had apparently been built into the cross-walk originally and that it had existed for as long as any of his witnesses could remember. Plaintiff proved, therefore, not that the bed of Jacksonia Street had been allowed to fall into disrepair, but that it had been constructed with an uncovered gutter three inches deep.

As there is nothing in the record from which a jury could properly have found that defendant had neglected to make repairs to a defect appearing in its street, the verdict should not have been allowed to stand and there was no error in granting defendant's motion for judgment n. o. v.

Had plaintiff alleged that the municipality was negligent in permitting the open gutter to be constructed and maintained, he would have been in no better position. A city is not liable for injuries resulting from the use of its streets as constructed unless the method of construction adopted created an unreasonable risk of harm to those upon the highway: *Easton v. Neff*, 102 Pa. 474; *Stanka v. Shamokin*, 66 Pa. Superior Ct. 553; *Neuin v. Pottsville*, 70 Pa. Superior Ct. 377; *Sefert v. Williamsport*, 82 Pa. Superior Ct. 471. The installation and use of open gutters kept in good repair is not the creation of a condition unreasonably dangerous to pedestrians: *Heiss v. Lancaster*, 203 Pa. 260, 52 A. 201; *Wright v. Lancaster*, 203 Pa. 276, 52 A. 245. "It is possible that the open gutter is not the very best design; but there is no duty on the city to adopt the very best; if we so decide, then the rule is no longer that the highways shall be maintained in a reasonably safe condition, but a higher duty is imposed, that is, that they shall be constructed in the very best method for safety": *Canavan v. Oil City*, 183 Pa. 611, 615, 38 A. 1096. "The streets of a city cannot be maintained at a dead level. There must be some inequalities and offsets here and there. To hold the municipality responsible for missteps or slips by the users of the streets would be to make it an insurer": *Mason v. Philadelphia*, 205 Pa. 177, 179, 54 A. 773.

The cases cited by appellant to support his argument that the question of the city's negligence was for the jury are readily distinguishable on their facts. *Chilton v. Carbondale*, 160 Pa. 463, 28 A. 833; *Henn v. Pittsburgh*, 343 Pa. 256, 22 A. 2d 742; *Kuntz v. Pittsburgh*,

123 Pa. Superior Ct. 394, 187 A. 287; *Heinz v. Pittsburgh,* 137 Pa. Superior Ct. 603, 10 A. 2d 100; and *Timlin v. Scranton,* 139 Pa. Superior Ct. 503, 12 A. 2d 502, were all cases in which the proofs established that the sidewalks or street crossings had developed holes, unevenness, or other defects not structural in nature, while the evidence adduced by appellant here fails to show any deterioration from the original condition of the cross-walk upon which he fell. Reliance upon *McCarthy v. Pittsburgh,* 127 Pa. Superior Ct. 399, 193 A. 358, is misplaced. That decision merely stands for the proposition that a city is not justified, as a matter of law, in placing surface gutters three to five inches deep across a sidewalk, and that, when it has done so, it is for a jury to say whether the conduct was negligent. "Common experience would also tell us that what might be regarded as a slight inequality in a gutter or street might be quite a serious defect in a pavement": *Shafer v. Philadelphia,* 60 Pa. Superior Ct. 256, 258.

Judgment affirmed.