Carol Wyke and Kathleen Wyke, Appellants *v.* Ruth Trzyna Ward, Administratrix of the Estate of Thaddeus T. Trzyna, Deceased et al., Appellants.

Robert Kozub and Donna Kozub, his wife, Appellants *v.* Commonwealth of Pennsylvania, Department of Transportation et al., Appellees.

Ruth Trzyna Ward, Administratrix of the Estate of Thaddeus T. Trzyna, Jr., Deceased, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation et al., Appellees.

Ruth Trzyna Ward, Administratrix of the Estate of Thaddeus T. Trzyna, Jr., Deceased, Appellant *v.* Robert Elliot et al., Appellees.

Argued October 5, 1983, before Judges Rogers, Barry and Barbieri, sitting as a panel of three.

*Thomas L. Cooper, Gilardi & Cooper, P.A.*, for appellants, Carol Wyke and Kathleen Wyke.

*Gary Kalmeyer, Kalmeyer and Kalmeyer,* for appellants, Robert Kozub and Donna Kozub, his wife.

*Felix J. DeGuilio,* for appellant/appellee, Ruth Trzyna Ward, Administratrix of the Estate of Thaddeus T. Trzyna, Jr., Deceased.

*Carl W. Brueck, Jr.,* for appellees Robert Elliot, Joseph Giglio, Robert Kozub, Jerry T. Koberna and Aluma Products Co.

*John G. Eidemueller, Jr.,* Deputy Attorney General, with him *Herbert L. Olivieri,* Chief of Tort Litigation, and *LeRoy S. Zimmerman,* Attorney General, for appellee, Pennsylvania Department of Transportation.

Opinion by Judge Barry, April 6, 1984:

These appeals result from a final order of the Court of Common Pleas of Allegheny County, dated December 17, 1982, which denied motions for new trials filed by appellants, Carol Wyke, Kathleen Wyke, Robert Kozub, Donna Kozub and Ruth Trzyna Ward, Administratrix of the Estate of Thaddeus Trzyna, deceased.

On May 17, 1979, a multiple motor vehicle accident occurred at the intersection of Route 60 and Cliff Mine Road, Allegheny County. Route 60, at the time of the accident, was a highway of four lanes, two north bound and two south bound, which provided the main access between downtown Pittsburgh and the Greater Pittsburgh International Airport. Except for the intersection where the accident occurred, the north bound and south bound lanes were divided by an eight foot wide medial strip. Cliff Mine Road is a two-lane road which forms a T-inter-

section with Route 60, entering the latter road on its west side. Traffic travelling north on Route 60 was permitted to make a left turn across the south bound lanes of Route 60 to proceed in a westerly direction on Cliff Mine Road. At this intersection, a paved stretch of road eight feet wide by 130 feet long allowed these left turns.

The posted speed limit on Route 60 was fifty-five miles per hour. There was no traffic light at the intersection in question and a person making a left turn had to do so from the left passing lane since there was no separate left turn lane. At a distance of 750 feet south of the intersection on Route 60 there was a sign designating the speed limit at forty miles per hour; at 250 feet south was another sign indicating a T-intersection ahead.

At the time of the accident, appellants Robert and Donna Kozub were in their car approaching the intersection travelling south in the right lane on Route 60. Appellants Carol and Kathleen Wyke were passengers in a car driven by Joseph Giglio in the left lane which was approximately abreast with Kozub's automobile.

As these autos approached the intersection, an automobile driven by Robert Elliot was stopped in the left passing lane of the north bound lanes of Route 60, with his left turn signal on, ready to make a left turn onto Cliff Mine Road. Mr. Elliot testified that ten per cent of his car was in the paved medial area, thereby leaving ninety percent of the car projecting into the north bound passing lane of Route 60. At that time, a van driven by Thaddeus Trzyna, in a north bound lane, crossed over the paved medial strip into the south bound lanes and collided with both automobiles in which appellants were travelling. Trzyna was thrown from the van and killed. Shortly

thereafter, a tractor-trailer driven by Jerry Koberna, in a south bound lane of Route 60, behind the Giglio vehicle, collided with the rear of that automobile. According to testimony of Mr. Elliot, whose car was not struck in any manner, immediately after the impact between the Trzyna van and the Giglio automobile, a flat-bed truck passed the Elliot vehicle in the right-hand lane of the north bound lanes of Route 60.[1]

The Wykes sued Ruth Trzyna Ward, Administratrix for the Estate of Thaddeus Trzyna (Estate), William Engleman, Trzyna's employer at the time of the accident, Jerry Koberna and his employer, Aluma Products Co. The latter, subsequently, joined the Pennsylvania Department of Transportation (DOT) as an additional defendant. The Kozubs sued all of the aforementioned defendants. The Estate of Trzyna sued Robert Kozub, Joseph Giglio, Robert Elliot, Jerry Koberna and his employer, Aluma Products Co. Aluma Products Co., in the Wyke lawsuit, joined DOT as an additional defendant. In a separate suit, the Estate sued DOT.

All lawsuits were consolidated for trial which were tried on the issue of liability alone. During the course of trial, the plaintiffs attempted to offer evidence against DOT, but for a variety of reasons, the trial court refused to allow the admission of any of this evidence. As a result, the trial court directed verdicts for DOT in all suits in which it was a defendant. The trial court also directed verdicts for all defendants in those cases where the Estate of Trzyna was the plaintiff. Post-verdict motions, filed

---

[1] This becomes important because it was argued that Trzyna could not have swerved to the right to avoid the Elliot automobile, thereby offering an explanation of why Trzyna crossed into the line of oncoming traffic.

by all present appellants, were denied by the court en banc and these appeals followed.

While four separate appeals have been filed, we are presented with only two issues. First, the Kozubs, the Wykes and the Estate of Trzyna claim that the trial court erred in refusing to allow the admission of the proffered evidence against DOT, which necessarily culminated in verdicts in DOT's favor. Second, the Estate of Trzyna claims that the trial court erred in directing verdicts against the Estate when it ruled that Robert Elliot had not been negligent as a matter of law.

All of the appellants in these cases allege that the trial court erred in excluding all evidence relating to DOT's potential liability. Appellants admit that entry of directed verdicts for DOT was proper if the trial court's ruling excluding the evidence was correct. If, however, the trial court excluded proper evidence, a new trial is required. *Lambert v. Durallium Products Corp.*, 364 Pa. 284, 72 A.2d 66 (1950); *Eldridge v. Melcher*, 226 Pa. Superior Ct. 381, 313 A.2d 750 (1973).

At trial, plaintiff offered the following: (1) evidence compiled by DOT of 177 accidents at this intersection between 1960 and 1980; (2) letters from various individuals to DOT complaining about the frequency of accidents at the intersection and asking that DOT take some steps to correct the problem (either close the crossover, install a traffic signal or build a separate left hand turn lane); (3) a reply to one of these letter writers from the Secretary of Transportation acknowledging that the intersection was unsafe and describing plans to build a separate left-turn lane; (4) a survey of accidents compiled by the commander of a nearby Air National Guard base which showed that seven accidents had occurred be-

tween 1975-77 under circumstances similar to this accident; (5) evidence that this intersection was the only left turn area on Route 60, as two nearby left turn medial areas had recently been closed; (6) evidence that DOT planned to build a separate lane for left turns in 1977 but had not done so; (7) testimony of a DOT employee which identified the intersection as a hazardous road location because of its traffic pattern; and, (8) evidence that the State Police officers who investigated this accident filed a highway hazard report with DOT.

At the time of this accident, Section 5110(a)(4) of the Judicial Code,[2] 42 Pa. C. S. §5110(a)(4), provided:

> (a) [A]n action shall not be barred and the defense of sovereign immunity shall not be raised to claims for:
>
> . . . .
>
> (4) Commonwealth real estate, highways and sidewalks—Damages caused by a dangerous condition of Commonwealth real estate . . . and highways under the jurisdiction of Commonwealth agencies. . . .

To establish liability on the part of DOT, it was incumbent on the plaintiffs to prove initially the existence of a "dangerous condition" at the intersection of Route 60 and Cliff Mine Road. In *Mistecka v. Commonwealth*, 46 Pa. Commonwealth Ct. 267, 408 A.2d 159 (1979), this Court was presented with a question of whether a "condition" existed where individuals were throwing rocks down at cars from a bridge above a state-maintained highway. As we stated:

---

[2] This section has been repealed and reenacted in substantially the same form by the Act of October 5, 1980, P.L. 142, 42 Pa. C. S. §8522.

Among the ordinary meanings of the word "condition" is reference to "a state of affairs that hampers *or* impedes *or* requires correction." Webster's New Collegiate Dictionary 235 (1977). Most importantly, it is clear that the circumstances here give rise to a condition which is related to travel on the highway and is conceivably correctable. (Emphasis added.)

*Id.* at 273, 408 A.2d 162.

The trial court correctly asserted that to recover against DOT, the appellants had to prove the existence of a dangerous condition in or at the intersection in question. The trial court, however, held that *Mistecka* was distinguishable from this case since:

[a]n intersection of roadways is not "a state of affairs which hampers or impedes" traffic. To the contrary, intersecting roadways expedite and facilitate the flow and movement of traffic. If intersecting roadways could be said to be a "condition" which "hampers or impedes" traffic which requires correction, then the correction is to eliminate intersecting roadways since, even where there are traffic control or law enforcement officers controlling the movement of traffic through intersections, history demonstrates there are accidents within intersections of roadsays (sic). The intersecting of roadways as part of a design plan, in and of itself, is not a dangerous condition.

(Page 20 of trial court's opinion).

We agree that not every intersection, either as part of a design plan or in and of itself, constitutes a dangerous condition. Appellants make no such assertion; they argue only that *this* intersection is a dangerous condition. Even if it were necessary to show a "state of affairs that hampers or impedes"

traffic, we would have no problem holding that an intersection requiring drivers to stop their automobiles *in the left passing lane* of a limited access highway to execute a left turn did, in fact, hamper or impede traffic. Furthermore, the definition of condition quoted in *Mistecka,* in using the disjunctive "or" allows the definition to be "a state of affairs . . . requiring correction". Most importantly, we believe here that the decision whether a condition is dangerous is for a jury alone. As we stated:

> [I]n cases under 42 Pa. C. S. §5110(a)(4), we will leave to the determination of a jury the question of whether or not the condition is a dangerous one. That aspect is specifically expressed in the initial clause of the proviso stating, ". . . the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of damage which was incurred. . . ."

*Mistecka* at 273, 408 A.2d at 162. *Accord Preteroti v. Uniservice, Inc.,* 51 Pa. Commonwealth Ct. 74, 413 A.2d 787 (1980). The trial court, in holding that no "dangerous condition" existed in this case usurped the jury's function in that regard.

In its brief, DOT argues that *Mistecka* does not redefine the substantive law of negligence to allow testimony of a "dangerous condition" to satisfy proof of a plaintiff's prima facie case. Appellants do not argue that mere proof of a "dangerous condition" establishes their respective cases. In *Macina v. McAdams,* 280 Pa. Superior Ct. 115, 421 A.2d 432 (1980), the court held that the basic elements in any negligence case are duty, breach of duty, causation and damages. Keeping these basic elements in mind, we will review the evidence sought to be admitted by appellants but rejected by the trial court.

One reason the trial court gave for excluding the evidence in question was that DOT was under no duty to redesign the intersection in such a way as to make it accident free. In *McIntyre v. City of Pittsburgh*, 238 Pa. 524, 86 A. 300 (1913), a plaintiff was injured in a fall as she was walking down some steps in one of the City's numerous hilly districts. The plaintiff testified that the steps were too steep and, in her estimation, the treads were inadequate, being only six to seven inches wide. Following a jury verdict for the plaintiff, the trial court granted the City's motion for a judgment n.o.v. In affirming the trial court's ruling, the court stated:

> It was not contended . . . that the steps were out of order in any way. Criticism was directed entirely against the manner in which they were constructed. It was claimed that they were too steep and that the treads were not wide enough. It was not shown that the method of construction was unusual, *or that it differed from the ordinary plan found in such localities. It is the duty of the city to construct and maintain its public ways so that they shall be reasonably safe and convenient for ordinary use and travel.* In performing this duty it is bound to use ordinary care and diligence, but it is not bound to provide against the possibility of an accident. . . . (Emphasis added.)

*Id.* at 526-27, 86 A. at 39. Furthermore, in *Canavan v. Oil City*, 183 Pa. 615, 616, 38 A. 1096, (1898), the court stated:

> It is possible that the open gutter is not the very best design; but there is no duty on the city to adopt the very best; if we so decide, then the rule is no longer that the highways

shall be maintained in a reasonably safe condition, but a higher duty is imposed, that is, that they shall be constructed in the very best method for safety. This approaches very nearly the liability of an insurer. . . . There was no dispute as to the fact that the open gutter was a common approved method of construction at crossings; nor could there be under the evidence any dispute as to this crossing being reasonably safe; the only fact from which it was argued that it was not reasonably safe was that it was uncovered; but that as already noticed, if not the best, was an ordinary approved method of construction.

As the trial court stated:

The offer of proof made by the plaintiffs is devoid of any offer to prove when the design plan for the Parkway in and at the area of Cliff Mine Road was designed, when the design plan was adopted and when the Parkway in this area was constructed; there was no offer of proof by either lay or expert witnesses that the design as adopted and executed was so defective as to constitute its adoption an act of negligence in itself.

The decision to build or change highways and the design plan thereof is within the discretion of the authorities charged with the duty to do so. It is not the function of the judicial branch of government to supplant its wisdom for that of the governmental entities whose job it is to determine, fund and supervise road construction and improvements. The judicial branch of government is not a super engineering and planning review board for construction and improvement of roadways. To hold

otherwise would raise a serious question relative to the separation-of-power doctrine.

This is not to say, however, that the governmental entity may not be liable for design defects inherent in the overall plan for a road project it has designed and directed to be built or from a defect in design that creates a known dangerous condition.

Where governmental entities design, construct or improve a roadway and the design plan is not so defective as to make its adoption an act of negligence and thereafter the roadway is maintained according to its original design, the governmental entity is not to be convicted of negligence because of the failure to determine the necessity for a new roadway or additions or improvements as may be supposed to be necessary to meet the demands for either greatly increased or decreased travel upon it or changing methods of transport or changing styles of living. To hold otherwise would make the state an insurer of the safety of all users of all roadways regardless of when the roadways were built and regardless of the design; this would impose upon the governmental entities the impossible burden of continuously changing every foot of roadway within its jurisdiction to adapt to changing conditions of use of the roadway.

(Pages 23-24 of Trial Court's opinion). We do not agree with all of the reasoning in this portion of the trial court's opinion.

Initially, there can be no question that the determination of what duty, if any, a defendant owes to potential plaintiffs is a question of law and, therefore,

the responsibility of the trial court. W. Prosser, Law of Torts, 289 (4th Ed. 1971). In that regard, the court's reliance on *Canavan and McIntyre* is well founded since DOT owes a duty to all users of the roads to provide *reasonably* safe highways. The element of reasonableness which is inherent in the concept of a duty owed, makes the question of reasonableness one for the jury. We do not believe in these circumstances that *Canavan* and *McIntyre* may be used for authority that the trial court could, in this instance, rule as a matter of law that this highway was reasonably safe.

In both of these cases, the Supreme Court held that there could be no negligence on the part of the governmental entity because the design and construction used was an approved method common for the time. We find these cases closely related to *Lehigh Coal Co.. v. Hayes,* 128 Pa. 294, 18 A. 387 (1889), and similar cases which have held that one engaged in a trade or industry should be held to no higher standard of conduct than called for in the practices and customs of that trade or industry. By the 1930's, the Supreme Court overruled these cases and held that custom and usage do not furnish the test which is controlling on the question of negligence. *MacDougall v. Pennsylvania Power and Light Co.,* 311 Pa. 387, 166 A. 589 (1933). As both *Canavan* and *McIntyre* were based on the concept of custom and usage, we are confident that the authority of their holdings is limited. We do not believe that appellants must prove a defect in the original design of the highway. Even if adoption of an original design plan of a highway was not negligent, a change in circumstances can support a finding of negligence when the governmental entity fails to make necessary improvements to protect the innocent wayfarer from foreseeable harm.

The trial court is undoubtedly correct in its assertion that the decision to repair the highays is within DOT's discretion; mandamus would not lie to compel DOT to make such changes. Where, however, it is alleged that a dangerous condition has developed and individuals are injured as a result thereof, DOT may not plead its discretion as an absolute defense against liability.

The trial court also excluded the proffered evidence because the injury suffered was not foreseeable. According to the trial court, this accident would not have occurred had not some other driver been operating his or her automobile in a negligent fashion and that this negligence was a superseding cause. Since drivers have a duty to operate their automobiles in a non-negligent fashion, the trial court concluded that this accident was not reasonably foreseeable. We believe, however, that the trial court again erred by invading the province of the jury. It is well settled in this Commonwealth that questions of foreseeability are for the jury and not the court. *Prost v. Caldwell Store, Inc.*, 409 Pa. 421, 187 A.2d 273 (1963); *Malitovsky v. Harshaw Chemical Co.*, 360 Pa. 279, 61 A.2d 846 (1948); *Bisson v. John B. Kelly, Inc.*, 314 A.2d 99, 170 A. 139 (1934). It is true that a defendant is relieved from liability if a second party's subsequent negligence is so extraordinary that it could not have been foreseen. *Whitner v. Von Hintz*, 437 Pa. 448, 263 A.2d 889 (1970). In this case, however, it is clear that the court erred by ruling as a matter of law that this accident was not foreseeable because of the alleged negligence of Trzyna, the driver of the van. As Fleming James has stated, "an actor may be required to foresee the actions of third persons even where they are negligent . . . if a reasonable man would do so under the circumstances." James,

*Accident Liability: Some Wartime Developments,* 55 Yale L.J. 365, 381 (1946) (footnote omitted).

Having determined that DOT may well have failed to meet its duty of providing "reasonably safe" highways and that the question of foreseeability should have been submitted to the jury, we must decide if any of the proffered evidence was admissible. As we are certain that at least three classes of the evidence sought to be introduced were admissible, a new trial is required.

In *McIntyre* at 528, 86 A. at 301, the court stated: "The evidence shows that these steps were the means of passage up and down a steep hillside, and that they were used daily by hundreds of people; *but it did not appear that any complaints of danger in their use was ever made to the city. . . .*" (Emphasis added.) In conjunction with other matters in these cases, the letters from the various individuals to DOT complaining of the frequency of the accidents should be admitted to show necessary notice to DOT. In this respect *McIntyre* is distinguishable.

In *Ringelheim v. Fidelity Trust Co.,* 330 Pa. 69, 198 A. 628 (1930), the court held that evidence of prior accidents was admissible to prove the fact that a dangerous condition existed if the prior accidents were similar to the one in this case being tried. Here, appellants sought to show that at least seven accidents similar to the instant one had occurred in a two year period. DOT argues that appellants never detailed the alleged similarities. Based on the trial court's ruling that no duty existed, appellants were never really given an opportunity to show the alleged similarities and that opportunity must be afforded on retrial.

Appellants also sought to introduce a letter written by the Secretary of Transportation to one of the com-

plaining letter writers in 1974. In the reply, the Secretary acknowledged *that the intersection was unsafe.* Such an admission is a well recognized exception to the hearsay rule and should have been admitted. *Whitman v. Riddell,*     Pa. Superior Ct.    ,     A.2d     (No. 2752 Philadelphia 1982, filed January 20, 1984); *Commonwealth v. Sherard,* 456 Pa. 505, 321 A.2d 372 (1974).

We recognize that appellants sought to introduce various other items of evidence. Rather than rule on each item, we believe that can be better done in the context of the retrial. As long as *any* of the evidence should have been admitted, there is enough to put the issue of DOT's liability before the jury, thus requiring a retrial.

The Estate of Trzyna also argues that the trial court erred in ruling that Robert Elliot was, as a matter of law, not negligent. The Estate introduced testimony of Elliot by way of a deposition. Elliot testified that as he waited in the northbound passing lane of Route 60 to make a left turn, he pulled only ten per cent of his car into the medial area, leaving ninety per cent in the passing lane. Furthermore, Elliot testified that as he waited to make the turn, he never looked in his rearview mirror to check on traffic approaching from the rear. While the case is far from strong in proving Elliot's negligence, if any, we believe a sufficient issue has been raised which requires the jury to rule on the issue. *McElhinny v. Iliff,* 436 Pa. 506, 260 A.2d 739 (1970).

Reversed.

ORDER IN 3353 C.D. 1982

AND Now, April 6, 1984, the order of the Court of Common Pleas of Allegheny County at No. GD 79-27839, dated December 17, 1982, is reversed and the

408

case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

### ORDER IN 107 C.D. 1983

AND Now, April 6, 1984, the order of the Court of Common Pleas of Allegheny County at No. GD 80-28370, dated December 17, 1982, is reversed and the case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

### ORDER IN 157 C.D. 1983

AND Now, April 6, 1984, the order of the Court of Common Pleas of Allegheny County at No. GD 79-29874, dated December 17, 1982, is reversed and the case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

### ORDER IN 158 C.D. 1983

AND Now, April 6, 1984, the order of the Court of Common Pleas of Allegheny County at No. GD 80-01659, dated December 17, 1982, is reversed and the case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.