532 A.2d 1243

The Estate of George Dankulich, by Catherine Ann Dankulich, Administratrix of the Estate of George Dankulich, and Catherine Dankulich, Individually, Appellants *v.* Frederick J. Tarantino, The Borough of Telford and The Commonwealth of Pennsylvania, Department of Transportation, Appellees.

Argued June 9, 1987, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Thomas C. Branca,* for appellants.

*William B. Koch, Koch, Phelps and Cunningham,* for appellee, Frederick J. Tarantino.

*John W. Stahl, Dougherty* & *Stonelake,* for appellee, Borough of Telford.

*William A. Slotter,* Office of Attorney General, for appellee, Commonwealth of Pennsylvania, Department of Transportation.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., October 30, 1987:

Catherine Dankulich, as administratrix of the estate of her husband, George Dankulich, and individually, appeals a Montgomery County Common Pleas Court order denying her motion to strike off nonsuit as to Frederick J. Tarantino and the Commonwealth of Pennsylvania, Department of Transportation (DOT). We affirm as to DOT but reverse and remand as to Tarantino.

George Dankulich, a pedestrian, died following injuries sustained in a collision with a car driven by Tarantino at or near the intersection of County Line Road and West Broad Street in the Borough of Telford. Before a jury, his personal representatives attempted to prove that the allegedly negligent design and maintenance of County Line Road at the site was a proximate cause of his death. Evidence was also presented purporting to demonstrate that Tarantino was driving negligently. At the conclusion of the plaintiff's evidence, the trial judge entered a nonsuit in favor of defendants DOT and Tarantino.[1]

Our scope of review has been repeatedly defined. A judgment of nonsuit may be entered only in clear cases

---

[1] Dankulich executed a joint tortfeasor release in favor of the Borough of Telford prior to trial.

and the appellant must be afforded the benefit of every fact and reasonable inference arising from the evidence. *McNally v. Liebowitz,* 498 Pa. 163, 445 A.2d 716 (1982). The entry of a nonsuit is proper only if a jury, viewing the evidence and all reasonable inferences arising from it, in the light most favorable to the appellant, could not reasonably conclude that the elements of the cause of action have been established. *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983).

Dankulich initially contends that DOT breached its duty to provide reasonably safe state highways.[2] *See* 42 Pa. C. S. §8522(b)(4). She argues that DOT's failure to post signs or otherwise control traffic at this intersection created a jury question of DOT's precaution and the foreseeability of pedestrian injury in these circumstances. We disagree.

The following evidence evolved at trial. Tarantino was driving northbound on County Line Road, a two-lane state highway posting a twenty-five mile-per-hour speed limit. It meets West Broad Street at a T-intersection where nine-feet crosswalks are painted at the north and south sides of the intersection. There are four commercial businesses, a parking lot and a sidewalk on each side of County Line Road. Cars may park at the street curbs. No traffic control devices control County Line Road at the intersection. West Broad

---

[2] Dankulich argues that DOT has a duty to correct and prevent hazardous conditions on state highways and cites extensive case law attempting to analogize the facts here with the situations presented therein. *See, e.g., Wyke v. Ward,* 81 Pa. Commonwealth Ct. 392, 474 A.2d 375 (1984); *Drew v. Laber,* 477 Pa. 297, 383 A.2d 941 (1978); 42 Pa. C. S. §8522(b)(4).

While we acknowledge the existence of DOT's duty to maintain state highways in a reasonably safe condition, we find the instant appeal distinguishable inasmuch as the evidence presented did not establish that DOT breached its duty in any way.

Street is controlled by a stop sign. The investigating police officer testified that County Line Road is a straight, level road having no visual obstructions. The intersection was described by the policeman and an eyewitness as well-illuminated.

Based on our careful review of the record, we find, as did the trial judge, that even when viewed in the light most favorable to Dankulich the evidence presented actually tends to refute the existence of the alleged dangerous condition. The road was flat and unobstructed, and the speed limit was sufficiently slow to permit a reasonably competent and careful driver to avoid pedestrian traffic. Only one witness testified that the intersection did not seem to be well lit, and that same witness, Tarantino, earlier acknowledged that he was able to see Clarence Hessler, Dankulich's companion, as he approached the intersection. N.T. 1/21/86, pp. 51-52, 55. Therefore, although there are some minor facts which could conjecturally support a finding of negligence on DOT's part,[3] we hold that there is simply no evidence to suggest that DOT's design or maintenance of this intersection was in any substantial way a proximate or legal cause of Dankulich's fatal incident. Accordingly, we affirm the trial court's decision as to DOT.

---

[3] Dankulich's theory of liability includes an allegation that the existence of a railroad crossing 150 feet south of the intersection caused traffic to accelerate toward the intersection. Dankulich also alleges that the painted lines of the crosswalk were not visible and that the intersection of West Broad Street was obstructed by a building on the corner. These allegations, however, are not established clearly in the record but appear to this Court to be pure speculation. A jury cannot be permitted to reach a verdict on the basis of speculation or conjecture. *Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A.2d 477 (1959). Further, what evidence there is to support these allegations appears to stem from Mr. Tarantino's testimony who, we note, had a substantial interest in placing the fault of the accident on someone or something other than himself.

Dankulich also challenges the entry of nonsuit in favor of Tarantino. The primary focus of her contentions[4] is that the trial court erred in excluding a statement, handwritten by eyewitness Hessler on the night of the accident, in which he indicated that Dankulich was *within the crosswalk* when he was struck. At trial Hessler testified that Dankulich was struck approximately twenty feet south of the southern crosswalk. The written statement also indicated that Tarantino was travelling at about seventy miles per hour at the time. Dankulich identifies other evidence such as the distance from the point of impact that Dankulich's body landed[5] and Tarantino's failure to take any evasive action to contend that there existed sufficient circumstantial evidence of Tarantino's negligence to submit that issue to the jury. We agree.

While Hessler's prior inconsistent statement appears to be pivotal to the issue of Dankulich's comparative negligence, we hold that the circumstantial evidence of Tarantino's stopping distance, and his admitted failure to see Dankulich prior to impact, created a factual question which was in and of itself properly submissible to the jury.

Moreover, we believe that the trial judge erred in excluding the prior inconsistent statement written by the eyewitness Hessler. Our Supreme Court's recent

---

[4] Dankulich additionally protests the trial court's reliance on the case of *Barney v. Foradas,* 305 Pa. Superior Ct. 404, 451 A.2d 710 (1982) (no other possible inference but that pedestrian was "contributorily" negligent was proper grounds for entry of nonsuit). However, in light of our decision as to the sufficiency of the evidence, we need not address this contention.

[5] The police diagram of the accident which places the point of impact at the southern edge of the south crosswalk indicates that Dankulich's body came to rest north of the northern crosswalk, a distance of approximately sixty-seven feet.

decision in *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986), embraced the "modern" rule, allowing the use of prior inconsistent statements of a non-party witness as substantive evidence. Applying this rule retroactively,[6] there is no question but that Hessler's prior statement, if credited by a jury, creates a substantial question as to Tarantino's negligence.[7]

---

[6] Tarantino contends that *Brady,* which was decided *after* the instant trial court decision, should not be given retroactive effect because (1) *Brady* overrules clear past precedent, (2) prior case law was detrimentally relied upon by counsel in the presentation of its case before the trial court, and (3) the reliability of the prior inconsistent statement in *Brady* is not present here. *See Richardson v. LaBuz,* 81 Pa. Commonwealth Ct. 436, 474 A.2d 1181 (1984); *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 375 A.2d 1285 (1977).

However, our Supreme Court addressed this issue in *Commonwealth v. Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983), when it held that

> where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

We find *Cabeza* to be controlling as that decision likewise involved the retroactive application of a recently overturned *evidentiary* rule.

Moreover, while considerations such as the overruling of clear past precedent, "foreshadowing" the history of the rule in question, and the prejudice worked upon the parties remain relevant under the test enunciated in *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971), we do not believe that Tarantino has shown the requisite prejudice necessary to forestall the application of *Brady.* As clearly indicated within the *Brady* decision, the rule against admissibility of prior inconsistent statements has long been criticized, various exceptions have been created, and there has been a pronounced trend toward abolishing the rule as *Brady* did. Therefore, we believe this was not the overruling of a *clear* past precedent but rather a clearly "foreshadowed" change in the law.

[7] It appears that the trial judge likewise believed that a substantial jury question existed as to Tarantino's negligence but

Accordingly, we reverse the grant of nonsuit in favor of Tarantino and remand for a new trial.

### ORDER

The Montgomery County Common Pleas Court order, No. 81-15921 dated July 8, 1986, is affirmed with respect to the Commonwealth of Pennsylvania, Department of Transportation, but reversed as to Frederick J. Tarantino. The matter is remanded to the Common Pleas Court for a new trial.

Jurisdiction relinquished.

---

chose to grant the nonsuit regardless so that Dankulich could preserve his right to try the case against both parties if a retrial were ordered. *See* N.T., 1/21/86, pp. 160-61. We empathize with the trial judge's concern for the plaintiff's rights, but we note that this was not a proper basis for granting a nonsuit to Tarantino.