## Burton v. Terry

*Richard P. Haaz,* for plaintiff.
*Daren B. Waite,* for defendant City of Philadelphia.

KATZ, *J.,* October 12, 1990 — This opinion is in support of our order of the September 17, 1990,

granting the motion of defendant, City of Philadelphia, for judgment notwithstanding the verdict.

On October 10, 1983, plaintiff, Charles Burton Jr., was injured in an automobile accident that occurred at a five-point intersection. Defendant, Randolph Terry,[1] was driving a vehicle owned by Michelle Prichette,[2] in the wrong direction on 67th Street, a one-way street in Philadelphia, Pennsylvania. Defendant's vehicle collided with the plaintiff's automobile, which was travelling north on Limekiln Pike. At the intersection with Limekiln, westbound 67th Street had no signs indicating that 67th Street was one-way in an eastbound direction, and no signs warning the traffic which was proceeding in a wrong direction on 67th Street not to enter the intersection. There were, however, one-way signs posted on 67th Street a block east from the intersection with Limekiln.

Plaintiff's claim against defendant City of Philadelphia was that the design and maintenance of the streets and traffic controls at the intersection created a dangerous condition. At the trial plaintiff's expert witness, John Bickel, testified that the intersection's design created a dangerous condition because of the angle of the streets at the intersection, and the poor placement of the traffic controls. (N.T. 253-9.) At the time of the verdict the jury returned a verdict for plaintiff which found that the design and maintenance of the intersection created a dangerous condition, but that the design and maintenance of the traffic controls did not constitute a dangerous condition. (N.T. 469.)

At the trial, the city argues that *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987)

---

1. Defendant Terry was unable to be located for trial, and was unrepresented at trial.

2. The claim against Michelle Prichette was nonsuited.

(discussed more fully below), dictated that the court grant a motion for nonsuit, because the city was immune from liability. (N.T. 336-37.) The motion was denied because of other appellate cases that created an exception to immunity in response to dangerous street conditions. (N.T. 356.) See, e.g., *Dorsh v. Butler School District,* 105 Pa. Commw. 519, 525 A.2d 17 (1987); *Wyke v. Ward,* 81 Pa. Commw. 392, 474 A.2d 375 (1984).

On the day the jury was given their charges, the city brought to the attention of the court *Crowell v. City of Philadelphia,* 131 Pa. Commw. 418, 570 A.2d 626 (1990). (N.T. 478.) The court withheld its determination regarding *Crowell* until after trial. When the jury returned a verdict for the plaintiff, the city filed motions for judgment not withstanding the verdict, or, alternatively, a new trial.

The city basically states four arguments in its motions for a judgment n.o.v., or, alternatively, a new trial. The first is that *Crowell* mandates a judgment n.o.v. because the city is immune in joint tort-feasor cases like this one. Second, the city had no duty to protect traffic from dangerous conditions created when drivers proceed the wrong way on a one-way street. Third, plaintiff's expert's testimony about the condition at the intersection was improper without an explanation of the standard within the industry. Fourth, the city is not liable because it did not have sufficient notice to remedy the dangerous condition.

## I

### Judgment Notwithstanding the Verdict

A judgment notwithstanding the verdict should be entered when no two reasonable persons could disagree that the verdict was improper. *McLoskey v. New York Life Ins. Co.,* 292 Pa. Super. 1, 436 A.2d

690 (1981). Furthermore, if the applicable law would not permit recovery upon the facts which had been alleged, and the jury has found, then a judgment n.o.v. is proper. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977); *Kobylinski v. Hipps,* 359 Pa. Super. 549, 519 A.2d 488 (1986). In the case at hand, this court will grant a judgment n.o.v. in favor of the city, because of the Pennsylvania Commonwealth Court's decision in *Crowell, supra.*

## II

### *The Effect of Crowell*

*Crowell, supra,* is a case which explains the limits of immunity provided to the city in the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§8541, 8542. Section 8541 sets out the basic blanket immunity afforded to local agencies. Section 8542 states the exceptions for which a local agency will remain liable for its acts or the acts of its employees. Section 8542 imposes a three-step process to determine whether a local agency should lose its immunity in a certain situation. The first two conditions require that a cause of action for an injury would have arisen against a party without the immunity defense, and that the injury be caused by negligent acts of the local agency or its employees acting within the scope of their employment. 42 Pa.C.S. §8542(a)(1) and (2). The third condition is that the negligent conduct of the local agency or employee fall within, at least, one of eight enumerated categories. 42 Pa.C.S. §8542(b)(1) to (8).

In the case at hand, plaintiff contended that the two exceptions which applied to this case were the ones applicable to traffic controls and streets. 42 Pa.C.S. §8542(b)(4) and (6). The city contended at

trial that *Mascaro, supra,* precluded liability even if the city's actions fell within the immunity exceptions. The city maintained that the immunity exceptions do not apply if the city's negligence has merely facilitated the actions of a third party. Furthermore, as previously noted, the city also contended that *Crowell, supra,* more specifically applied to the case at bar.

In *Mascaro,* a detainee in Philadelphia's Youth Study Center escaped and burglarized the home of the Mascaro family, and brutally raped and beat the women of that family. *Mascaro, supra.* The Mascaros sued the city and the juvenile center for negligently maintaining the real estate and physical plant of the center, which permitted the escape. *Id.* Thus, the plaintiffs contended that they maintained a cause of action that fit an exception to the city's immunity. The Pennsylvania Supreme Court held that the defect on the real estate must itself cause the injury, and not merely facilitate the injury through the acts of a third party.[3] *Id.* The Supreme Court concluded that harm caused by third parties cannot be imputed to the local agency. *Id.*

*Mascaro* turned on the real estate exception to immunity, and the way the city's negligence facilitated a third party's criminal conduct; however, *Mascaro* does not limit itself by express language to apply only to cases in which the city's negligence facilitates third-party criminal conduct.

In a subsequent case, *Herman v. Greene County Fair Board,* 112 Pa. Commw. 615, 535 A.2d 1251 (1988), the court stated that the analysis in *Mascaro* applies to all eight exceptions of immunity under 42 Pa.C.S. §8542. The importance of the decision in

3. The *Mascaro* court explained that acts of a third party are expressly excluded in the general immunity section. *Mascaro, supra.*

*Herman* can be seen when one considers that *Mascaro* addressed the real estate exception, *Herman* dealt with the animal exception[4] and *Crowell,* as well as the case at bar, analyzed the traffic control and streets exceptions.

The Commonwealth Court of Pennsylvania, in *Crowell,* stated that the court's application of *Mascaro's* standard to the facts of *Crowell* is a logical extension. *Crowell, supra.* The accident occurred in *Crowell* at a turn in the road. *Id.* At the approach to the turn there was a traffic directional sign warning drivers that the road turned left. *Id.* The road actually turned right. *Id.* The Crowell's vehicle was struck when the automobile driven by the defendant, Lewis, turned left and crossed the median. *Id.* Defendant Lewis was intoxicated at the time of the accident, and, therefore, engaged in criminal conduct, but the court apparently did not consider that a relevant fact. See *Id.* Besides suing Lewis, the Crowells also sued the City of Philadelphia claiming that the city's negligent placement of the traffic signal was a substantial factor in causing the accident. *Id.*

The Commonwealth Court in *Crowell* stated that immunity exception section 8542(b)(4) required that "the traffic directional sign *itself* caused the Crowells' injuries." *Id.* at 630. (emphasis in original) The court explained that when a dangerous condition created by the traffic signal merely facilitated the accident and subsequent injuries, it was not enough to remove immunity from the city when the

---

4. *Herman, supra,* actually interpreted the Political Subdivision Tort Claims Act, Act of November 26, 1978, P.L. 1399, as amended, 53 P.S. §§5311.101 to .803, which was repealed. Act of October 5, 1980, P.L. 693, as amended, 42 Pa.C.S. §§8541-6, however, substantially re-enacted the same language. See *Herman, supra,* at 617 n.1, 535 A.2d at 1252 n.1.

negligent conduct of another defendant was also involved. *Id.* The *Crowell* court continues by explaining that its decision effectively eradicates joint tort-feasor liability against a local agency. *Id.*

Under the facts of the case at hand, the jury found that the city was 30-percent liable for Burton's injuries due to the dangerous condition existing at the intersection because of the negligent design and maintenance of the streets at the intersection.[6] A jury had also determined the city's liability in *Crowell. Crowell, supra.* The Commonwealth Court in *Crowell,* however, determined that a jury's finding of a percentage of liability is irrelevant when the case could have been dismissed before reaching the jury. Thus, in the case at hand, a judgment n.o.v. would be proper, regardless of the city's percentile of liability.

Plaintiff contends in his post-trial brief that *Crowell* should not apply because it was incorrectly decided. Regardless of the wisdom of the decision, *Crowell's* holding still requires this court to find that the city is immune from liability.

## III

### *Other Issues for Post-Trial Relief*

Defendant city also requested post-trial relief because: (1) the city had no duty to protect traffic from dangerous conditions created when drivers proceed the wrong way on a one way street, (2) plaintiff's expert testimony was improper without an explanation of the standard within the industry, and, (3) the city did not have reasonable notice to remedy the dangerous condition. Our grant of a judgment n.o.v. in favor of defendant was based on the

---

5. The jury also determined that defendant Terry was 70-percent negligent, and that the city had not negligently maintained or designed the traffic controls.

decision in *Crowell, supra;* however, we will briefly address the other issues presented in post-trial motions.

## City's Duty to Protect Motorists

The contention is basically correct that the city had no duty to design the intersection at Limekiln Avenue and 67th Street to permit traffic on Limekiln to see traffic from 67th entering from the wrong direction into the intersection. The city's duty is to make the city streets reasonably safe for normal use. See, e.g., *Merritt v. City of Chester,* 344 Pa. Super. 505, 496 A.2d 1220 (1985); *Wyke v. Ward,* 81 Pa. Commw. 392, 474 A.2d 375 (1984).

The reasonableness of the city's duty to keep streets safe for normal use is explained in *Wyke v. Ward, supra.* The court in *Wyke* states that determining whether a duty existed at all is a question of law, but that the injection of reasonableness into the definition of that duty requires that the jury decide whether the streets in question were reasonably safe. 81 Pa. Commw. at 404, 474 A.2d at 381.

The *Wyke* court also explained that custom and usage did not define the standard for negligence, and, therefore, even if the design and construction of the street was not done negligently when originally installed, later developments may make the government entity liable for negligence if it fails to protect individuals from foreseeable harm. *Id.* Furthermore, the government entity would be negligent whether or not the original road design and construction were at the city's discretion. 81 Pa. Commw. at 405, 474 A.2d at 381.

*Wyke* also explains that the foreseeability of an accident is a jury question. 81. Pa. Commw. at 405, 474 A.2d at 381-2. Thus even if an accident was caused by a negligent third party, the city may have

breached its duty to provide reasonably safe streets if the jury determines that the occurrence was foreseeable.

## Admissibility of Expert Testimony

The city contends that plaintiff's expert testimony regarding the design defect of the street was incorrectly permitted to go to the jury. The basis for the city's contention is that the expert failed to explain the industry standard for highway design, when he explained that his opinion was within a reasonable degree of engineering certainty.

The city contends that if established industry standards were followed, then there would be no basis for finding that the intersection was dangerous. The city also contends that the failure to state the industry standard prevents the expert from giving his opinion.

The use in negligence cases of the "custom and practice" standard is discussed in *Dallas v. F.M. Oxford Inc.*, 381 Pa. Super. 89, 552 A.2d 1109 (1989). The *Dallas* court quoting from *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205 (3d Cir. 1970) comments that:

"Evidence of the customary practice within the industry although admissible is not essential to a finding of negligence. Indeed . . . evidence of what is usually done is not necessarily what ought to be done, and is, therefore, not necessary to prove negligence." *Dallas, supra.* (citations omitted)

In the case at hand, plaintiff's expert provided testimony of why he believed the intersection created a dangerous condition from the facts that were in evidence. (N.T. 250-60.) See, e.g., *Collins v. Hand,* 431 Pa. 378, 1246 A.2d 398 (1968) (leading case requiring expert base testimony on facts in record); *Commonwealth v. Haddle,* 271 Pa. Super.

418, 413 A.2d 735 (1979) (expert testimony based on admitted facts and reports). Plaintiff's expert testified about what could be done to improve the situation, and that his opinion was within a reasonable degree of engineering certainty. As the above discussion notes, an industry standard is admissible in negligence cases, but not mandatory. In the case at hand, the plaintiff's expert gave his opinion based on facts in the record; nothing else is required to admit his testimony into evidence. See, e.g., *Haddle, supra.* See also, Packel & Poulin, *Pennsylvania Evidence* §§702-3 (1987).

## Sufficiency of Notice

Defendant city contends that *Fenton v. City of Philadelphia*, 127 Pa. Commw. 466, 561 A.2d 1334 (1987), is controlling. In *Fenton*, the plaintiff claimed that lack of a left-hand turn lane caused his accident. The plaintiff in *Fenton* attempted to prove that the city had reasonable notice to correct the dangerous condition. The plaintiff offered evidence of dangerous conditions such as heavy truck traffic, as proof of notice for the specific dangerous condition in question — no left-hand turn lane. *Fenton, supra.* The court in *Fenton* did not permit the evidence, because it was not similar to a dangerous condition created by the lack of a turning lane. *Id.*

*Wyke v. Ward, supra,* is more appropriate to the case at hand. In *Wyke,* the Commonwealth Court would permit evidence of other similar accidents to show that the Pennsylvania Department of Transportation had notice of the dangerous condition at that accident site. 81 Pa. Commw. at 406, 474 A.2d at 382. The court would give the plaintiff in *Wyke* the opportunity to illustrate the alleged similarities of the accidents. *Id.*

In the case at hand, plaintiff Burton provided testimony of witnesses who live adjacent or near the intersection of Limekiln and 67th. They testified that they witnessed and reported accidents which involved automobiles entering the intersection with Limekiln from the wrong direction on 67th. (N.T. 79-81, 88-92, 137-43.) The evidence proffered by the plaintiff illustrates other accidents which involved collisions between automobiles proceeding north on Limekiln and automobiles entering the intersection from the wrong direction on 67th street. *Fenton, supra,* is therefore distinguishable, because plaintiff's evidence in *Fenton* was of a dangerous condition due to heavy truck traffic, and not due to a lack of a turning lane, and the evidence offered in the present case all referred to accidents involving vehicles proceeding the wrong way on 67th Street.

Furthermore, pursuant to the language of 42 Pa.C.S. §8542(b)(6) which states that a claimant "must establish that a dangerous condition created a reasonably foreseeable risk of the kind of injury which occurred and the local agency had actual notice or could reasonably be charged with notice under the circumstances," the question of whether the city had notice is one for the fact finder. See, e.g., *Medicus v. Upper Merion Township,* 82 Pa. Commw. 303, 475 A.2d 918 (1984). In the case at hand the jury decided that the city had reasonable notice.

## IV

### Conclusion

In response to the above discussion and the Pennsylvania Commonwealth Court's decision in *Crowell, supra,* we granted defendant City of Philadelphia's motion for judgment n.o.v. and denied its motion for a new trial by our order of September 17,

1990. We also denied plaintiff's motion for delay damages as moot on September 17, 1990, because we granted a judgment n.o.v. for defendant.