592 A.2d 1380

**Charles BURTON, Appellant,**

v.

**Randolph TERRY, Michelle Pritchette and
City of Philadelphia, Appellees.**

Commonwealth Court of Pennsylvania.

Argued March 6, 1991.
Decided June 5, 1991.

Richard P. Haaz, Philadelphia, for appellant.

Alan C. Ostrow, Philadelphia, for appellees.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

SMITH, Judge.

Charles Burton, Jr. (Burton) appeals from the September 17, 1990 order of the Court of Common Pleas of Philadelphia County which granted the motion of the City of Philadelphia (City) for judgment notwithstanding the verdict.

On February 15, 1984, Burton commenced an action against Randolph Terry (Terry); Michelle Pritchette [1]; and the City as a result of injuries sustained in an automobile accident which occurred at the intersection of 67th Avenue, Limekiln Pike and Wyncote Avenue in the City on October 10, 1983 when Burton's car, travelling northbound on Limekiln Pike, was struck by a car driven by Terry who entered the intersection after travelling the wrong way on 67th Avenue, a one-way street running eastbound. Burton alleged, among other things, that pursuant to 42 Pa.C.S. § 8542(b)(4) and (6) [2] the City was liable for his injuries due to dangerous conditions created by negligent design and maintenance of the traffic signs, traffic controls and streets at the intersection where the accident occurred.

At the trial, Burton presented testimony of lay and expert witnesses to prove that his injuries were caused by the alleged dangerous condition of the intersection created by negligent design and maintenance of the traffic signs, other

1. Michelle Pritchette is the owner of the car driven by Terry.
2. 42 Pa.C.S. § 8542(b) provides in pertinent part:
   (b) Acts which may impose liability.—
   The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency.

   . . . .
   (4) Trees, traffic controls and street lighting.—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

   . . . .
   (6) Streets.—
   (i) A dangerous condition of streets owned by the local agency except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

traffic controls and the streets. The City thereafter moved for a nonsuit and a directed verdict, contending that the City was immune from liability pursuant to *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). The trial court denied these motions and thereafter presented the case to the jury which found that no dangerous condition of traffic controls existed at the intersection but that it was designed and maintained by the City in such a manner so as to constitute a dangerous condition. The jury further found that Terry was negligent and that his negligence was a substantial factor in bringing about Burton's injuries. The jury found the City 30% negligent and the other defendants 70% negligent, and awarded Burton total damages in the amount of $560,000. N.T., Trial, pp. 468–72.

On March 5, 1990, the City filed a motion for post-trial relief requesting the entry of judgment notwithstanding the verdict or, in the alternative, a new trial. In its motion, the City alleged, inter alia, that the trial court erred in allowing the case against the City to go to the jury despite a lack of evidence showing that the damage would be recoverable at common law and despite a lack of evidence necessary to establish that Burton's claims fell within the streets exception under 42 Pa.C.S. § 8542(b)(6). Further, the City relied upon *Crowell v. City of Philadelphia*, 131 Pa.Commonwealth Ct. 418, 570 A.2d 626, *petition for allowance of appeal granted in part*, 525 Pa. 550, 582 A.2d 1311 (1990), *later overruled in part by Buschman v. Druck*, 139 Pa.Commonwealth Ct. 182, 590 A.2d 53 (1991) to argue that since *Crowell* eliminated joint tort-feasor liability on the part of a governmental unit, the City could not be held liable in this action. Finally, the City argued that it had no common law duty to protect traffic from dangerous conditions created by drivers proceeding the wrong way on a one-way street. The trial court, relying on *Crowell*, concluded that the City was immune from liability and granted the City's motion for judgment notwithstanding the verdict.

Burton's main contention on appeal centers around his attack on this Court's *Crowell* decision and urges this Court

to overrule *Crowell.* Because *Buschman*[3] has since over-ruled *Crowell* in part, holding that a governmental unit may be held jointly liable with a non-governmental unit, the trial court's reasoning can no longer stand. However, this Court finds that the decision of the trial court must be affirmed on the alternative ground asserted by the City in its motion for post-trial relief. *See Van Mastrigt v. Delta Tau Delta,* 393 Pa.Superior Ct. 142, 573 A.2d 1128 (1990) (an appellate court may affirm a decision of the trial court if result is correct on any ground).

▇▇▇ In reviewing a motion for judgment notwithstand-ing the verdict, the facts must be considered in the light most favorable to the party against whom the motion was made. If, however, the law does not permit recovery upon the alleged facts on which the jury may justifiably have found, a judgment notwithstanding the verdict should be granted. *Kobylinski v. Hipps,* 359 Pa.Superior Ct. 549, 519 A.2d 488 (1986). Moreover, where the evidence of the party having the burden of proof was legally insufficient to go to the jury, the proper remedy is a judgment notwithstanding the verdict. *Kuhler v. Harrison Const. Co.,* 361 Pa. 100, 62 A.2d 853 (1949).

Initially, Burton had to satisfy the following two statu-tory requirements to maintain an action against the City: (1) the damages would be recoverable under common law or a statute creating a cause of action (42 Pa.C.S. § 8542(a)(1)); and (2) the injury was caused by the negligent actions of the agency or an employee acting within the scope of his office

3. *Buschman v. Druck,* 139 Pa.Commonwealth Ct. 182, 590 A.2d 53 (1991), involved a two-vehicle collision on a state highway. The drivers sued each other and the Department of Transportation, alleg-ing the negligence of the other driver and the Department's negligence in failing to place proper traffic signs at the curve where the accident occurred. The trial court granted the Department's motion for sum-mary judgment on the basis of *Crowell v. City of Philadelphia,* 131 Pa.Commonwealth Ct. 418, 570 A.2d 626, *petition for allowance of appeal granted in part,* 525 Pa. 550, 582 A.2d 1311 (1990). On appeal, an en banc panel of this Court overruled *Crowell* insofar as it held that a governmental unit can never be held jointly liable with a non-governmental unit.

or duties, excluding acts of crime, fraud, malice or willful misconduct. (42 Pa.C.S. § 8542(a)(2)). *Mascaro; City of Philadelphia v. Buck,* 138 Pa.Commonwealth Ct. 250, 587 A.2d 875 (1991).

Burton contends that he satisfied the threshold condition because under common law the City is under a duty to construct and maintain its streets reasonably safe for public use. The City argues on the other hand that Burton's claims against the City are barred for his failure to state a common law cause of action since its only duty under common law is to make the streets reasonably safe for normal use which, the City argues, was fulfilled by making the street one-way and placing appropriate traffic signs at all the possible entrances to the one-way street. The City further contends, as it did before the trial court, that it had no duty to protect the traffic from the dangerous condition created by drivers proceeding the wrong way on a one-way street.

Although the trial court stated in its opinion that its grant of the City's motion was based upon the *Crowell* decision, it further noted that "the [City's] contention is basically correct that the city had no duty to design the intersection at Limekiln Avenue and 67th Street to permit traffic on Limekiln to see traffic from 67th entering from the wrong direction into the intersection." Trial Court Opinion, p. 10. Thus, the issue which must be decided by this Court is whether Burton proved the City's breach of a common law duty to maintain its streets reasonably safe, to satisfy the first precondition for maintaining an action against the City as set forth at 42 Pa.C.S. § 8542(a)(1).

A municipality is under a duty to construct and maintain its streets so that they will be in a condition "reasonably" safe for the use of the public, but it is not an insurer of the safety of those who travel upon its thoroughfares. *Merritt v. City of Chester,* 344 Pa.Superior Ct. 505, 496 A.2d 1220 (1985); *Roslik v. Pittsburgh,* 155 Pa.Superior Ct. 150, 38 A.2d 353 (1944). The determination of what duty, if any, a defendant owes to potential plaintiffs is a

question of law. However, the element of reasonableness inherent in the concept of the City's duty in question in this case makes the question of reasonableness a question of fact. *Wyke v. Ward,* 81 Pa.Commonwealth Ct. 392, 474 A.2d 375 (1984). After a review of the record, this Court agrees with the City that Burton's evidence was legally insufficient to go to the jury and that the trial court's grant of the City's motion for judgment notwithstanding the verdict must be affirmed on that ground. *Kuhler.*

The following is the extent of the evidence relevant to the issue of whether the intersection in question was "reasonably" safe, which was presented by Burton through testimony of his witness, John Bickel, a traffic engineering expert:

Q. What significance, if any, is the fact that there are, it's a five legged intersection with one approach leaving the intersection?

A. The significance to me having been there, there is some added confusion because of the fifth leg and because the two main roadways, Limekiln and Wyncote are not at ninety degrees, they're skewed angles and then the fifth leg is at ninety degrees to Limekiln. That T-intersection, which only goes away from the main intersection, I found a little bit confusing, the configuration of the intersection.

Q. What do you mean by the expression, a skewed angle, what does that mean?

A. The angle that Wyncote crosses Limekiln is not ninety degrees, it's more like thirty degrees, so it's not a straight angle intersection, a standard cross intersection.

Q. What's the significance of that?

A. The significance being, I can use as an example, if someone is traveling eastbound on Wyncote and they want to turn right into Limekiln rather than being a ninety degree turn it's a very sharp, something less than forty-five degrees. This becomes generally a problem in this kind of an intersection, it's a very difficult turning movement.

Q. How about with respect to someone who is going north on Limekiln, what about the angles of the intersection with respect to visibility on 67th Street.

A. Well, the visibility problem comes in the greatest— this drawing doesn't show if there are interferences in any of the triangles created by the intersection. Probably the greatest visibility problem would be someone going north on Limekiln feeling comfortable that somebody isn't going west on Wyncote because according to what's on the corner of Limekiln and 67th, if that triangle is clear then there is no problem of seeing 67th....

Q. Well, you can assume from other exhibits that there are homes that go right up to the corner. How does that affect one's visibility?

A. That probably, that affects the visibility of someone going northbound on Limekiln, if they cannot see clearly so their right, they will not see what's happening at 67th Avenue.

Q. Until what point?

A. In this particular case it appeared to me that someone on 67th Avenue had to be out about to where this pedestrian crosswalk is shown before somebody on Limekiln could comfortably see them.

N.T., Trial, pp. 253–55.

Thus, the only expert testimony offered in support of Burton's claim of the City's breach of duty is essentially that the skewed angles of the streets obstructed or impaired views essentially of the drivers approaching the intersection. The City contends that the expert's testimony was not sufficient to establish a breach of duty to design and maintain its streets "reasonably" safe because the City had no duty to design the streets at the intersection of Limekiln Pike and 67th Avenue to enable traffic on Limekiln to see traffic going the wrong way on 67th Avenue ignoring "one-way" and "do not enter" signs.

In *Merritt*, the driver drove directly across the street without turning right or left, mounted a curb, crossed the sidewalk, mounted a retaining wall, knocked down a cyclone

fence, and plunged into the creek, resulting in his death. The Court, in affirming the trial court's grant of summary judgment in favor of the City of Chester, held:

> As a matter of law the City of Chester did not have a duty to construct and maintain a cyclone fence of sufficient strength and durability to withstand impact by a vehicle moving directly at and into the fence at a rate of speed in excess of 25 mph.... The City of Chester was obligated to maintain its streets so that they were reasonably safe. They will be deemed safe if they may be negotiated safely by all but the very reckless. However, there was no obligation on the City to construct and maintain its streets in a manner that would insure the safety of all drivers. It was not required to erect and maintain a cyclone fence on Seventh Street that was able to withstand impact with a rapidly moving vehicle that was out of control or which was recklessly or intentionally driven directly into it....
>
> .    .    .    .    .
>
> 'Public roads are intended for ordinary travel; if they meet the requirements which their ordinary uses demand, the authorities in charge of them have performed their duty under the law and cannot be made answerable in damages for extraordinary accidents occurring on them.'

*Id.* 344 Pa.Superior Ct. at 508–9, 496 A.2d at 1221–22 (citations omitted).

▆ In the matter *sub judice*, the City posted appropriate signs alerting drivers that 67th Avenue is one way running eastbound. Even when this Court accepts as true all testimony of Burton's witnesses that the intersection at Limekiln Pike and 67th Avenue was designed in such a way that a driver travelling north on Limekiln Pike is unable to see the traffic travelling the wrong way on 67th Street until the latter enters the intersection or crosswalk, that testimony was not legally sufficient as a matter of law to establish that the intersection was not reasonably safe for "normal use." *Campbell v. Department of Transportation*, 105 Pa.Commonwealth Ct. 494, 524 A.2d 1066, *appeal denied,*

517 Pa. 627, 538 A.2d 880 (1987); *Merritt*. The alleged dangerous condition was created by the driver who ignored the one-way traffic signs appropriately posted by the City and travelled the wrong way on a one-way street.

■ In this respect, the facts of this case are distinguishable from those in *Wyke* wherein all the drivers were lawfully operating their vehicles at the time of the multivehicle accident. In *Wyke*, the accident occurred when a vehicle, to avoid rear-ending another vehicle, stopped in the left-hand lane to make a left turn, crossed a medial strip and struck vehicles travelling in the opposite direction. The *Wyke* Court held that there was sufficient evidence for a jury to consider whether the intersection where drivers were required to make left-hand turns from the passing lane was a "dangerous condition" making the Department of Transportation potentially liable. Unlike *Wyke*, the instant case involved a driver who unlawfully travelled a one-way street creating the alleged dangerous condition. Since the City made 67th Avenue one-way and posted traffic signs at the entrance thereto, the City has met the requirement which the "ordinary" use of the public roads demand and has thus performed its duty under the law. Under these circumstances, the City cannot be held liable as a matter of law for damages for an "extraordinary" accident occurring on its roads as a result of a driver disobeying the posted traffic signs. *Merritt*.

Since Burton failed to present legally sufficient evidence to establish a duty owed to him by the City, the trial court's grant of the City's motion for judgment notwithstanding the verdict must be affirmed.

PELLEGRINI, J., concurs in the result only.

## ORDER

AND NOW, this 5th day of June, 1991, the order of the Court of Common Pleas of Philadelphia County dated September 17, 1990, granting the motion of the City of Philadel-

phia for judgment notwithstanding the verdict, is hereby affirmed.